[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Barnes*, Slip Opinion No. 2022-Ohio-4486.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4486

THE STATE OF OHIO, APPELLEE, *v*. BARNES, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Barnes*, Slip Opinion No. 2022-Ohio-4486.]

*Criminal law—Crim.R. 32.1—A presentence motion to withdraw a guilty plea should be freely and liberally granted—The determination whether there is a reasonable and legitimate basis for a defendant's request to withdraw his or her plea is within the sound discretion of the trial court—Court of appeals' judgment reversed and cause remanded.*

(No. 2021-0670—Submitted April 12, 2022—Decided December 15, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 109442, 2021-Ohio-842.

_____

STEWART, J.

{¶ 1} This discretionary appeal asks us to determine whether a defendant in a criminal case has a reasonable and legitimate basis to withdraw his guilty plea when, before sentencing, he discovers evidence that (1) his attorney withheld from

him and (2) would have negated his decision to plead guilty had he known about it. We hold that he does. Accordingly, we reverse the judgment of the Eighth District Court of Appeals affirming the trial court's judgment denying appellant Terry Barnes Sr.'s motion to withdraw his guilty plea.

**Facts and Procedural History**

{¶ 2} The underlying facts of this case, according to the transcripts of Barnes's hearings and the documents in the record, show that on September 10, 2017, Leah McLaurin confronted Barnes at a gas station on the east side of Cleveland, for unknown reasons. While at the gas pump in his vehicle, Barnes engaged in conversation with Leah, but Leah became hostile, and Barnes left the gas station after getting gas. Later that same day, Barnes returned to the gas station. Leah was still there, and Barnes approached her to discuss the previous argument.

{¶ 3} Someone at the gas station called Leah's brother, Jeffrey McLaurin, and told Jeffrey that Barnes was arguing with Leah. Jeffrey arrived at the gas station with a gun. Jeffrey struck Barnes in the face with the gun, Barnes drew his gun in response, and the two men exchanged gunfire. Barnes was shot in his elbow as he fled. Two bystanders and Leah also sustained gunshot wounds. Leah died shortly after being shot.

{¶ 4} Authorities were unable to determine who fired the shot that killed Leah. Although the gas station had interior and exterior surveillance cameras that showed Barnes, Jeffrey, and an unidentified third person firing guns, the footage did not show who was responsible for causing Leah's death. The state provided the video footage to Barnes's defense counsel, but it was labeled "counsel only," as allowed by Crim.R. 16(C).[1]

---

1. Crim.R. 16(C) states: "Except as otherwise provided, 'counsel only' material may not be shown to the defendant or any other person, but may be disclosed only to defense counsel, or the agent or employees of defense counsel, and may not otherwise be reproduced, copied or disseminated in any

**{¶ 5}** Almost two weeks after the shooting, Barnes was indicted in the Cuyahoga County Court of Common Pleas for one count of murder, in violation of R.C. 2903.02(B); one count of voluntary manslaughter, in violation of R.C. 2903.03(A); three counts of felonious assault, all violations of R.C. 2903.11(A)(2); and two counts of discharging a firearm on or near prohibited premises, violations of R.C. 2923.162(A)(3). All the charges carried one- and three-year firearm specifications under R.C. 2941.141(A) and 2941.145(A), respectively. Barnes pleaded not guilty during his arraignment.

**{¶ 6}** On September 19, 2019, Barnes accepted a plea deal from the state, in which he pleaded guilty to involuntary manslaughter. In exchange for his guilty plea, the state amended the voluntary-manslaughter charge to involuntary manslaughter, a violation of R.C. 2903.04(B), and asked the trial court to nolle prosequi the remaining counts and to dismiss the firearm specifications. The trial court granted the state's requests, accepted Barnes's guilty plea, and scheduled Barnes's sentencing hearing for October 31, 2019.

**{¶ 7}** On the day that Barnes was supposed to be sentenced, he filed a motion to withdraw his guilty plea. He asserted that he was not guilty and, citing 2018 Am.Sub.H.B. No. 228 (which amended R.C. 2901.05 and shifted the burden of proof on self-defense to the state), that he had acted in self-defense.[2] On November 6, Barnes filed a supplement to the motion to withdraw his guilty plea. He argued that his counsel never allowed him to view the video footage from the gas station with audio. Because one of Barnes's attorneys was unaware of the counsel-only designation, Barnes was inadvertently given access to the footage the night before his sentencing hearing. Barnes believed that the video footage with

---

way. Defense counsel may orally communicate the content of the 'counsel only' material to the defendant."

2. Barnes first alleged that he acted in self-defense at his bond hearing on January 31, 2018.

audio would establish that Barnes did not shoot first, which would bolster Barnes's self-defense claim. The state filed a memorandum in opposition to Barnes's motion, asserting that the withdrawal of Barnes's guilty plea would prejudice the state and that Barnes had not offered a valid reason for the trial court to grant his motion to withdraw.

{¶ 8} The trial court held a hearing on the motion, and Barnes asserted that his attorneys did not review all the discovery with him, including a large portion of the video footage. The trial court stated that although Barnes had "represented to [the] Court that [he had] reviewed everything," because his attorneys did not show him all the discovery, the court would appoint new counsel for Barnes for the purpose of representing him at a new plea-withdrawal hearing. The court conducted a second hearing, at which Barnes called his former attorneys as witnesses. None of the former attorneys recalled showing Barnes video footage of the shooting with audio, and Barnes testified he believed that the audio offered proof that he did not shoot first. Barnes also stated that he would not have pleaded guilty had he seen the video footage with the audio prior to entering his plea.

{¶ 9} Before ruling on the motion, the trial court stated:

> Before you proceed I do just want to remind you all that in considering this motion that I have to consider whether the prosecution would be prejudiced by a vacation of the plea, whether the accused was represented by highly competent counsel. There is no question about that. At all stages Mr. Barnes was represented by highly competent counsel.
>
> I also need to consider whether the accused was given a Criminal Rule 11 hearing, which he was in this matter, and I have provided a copy of the transcript, and reviewed that entire transcript of this Rule 11 hearing.

I also have to consider whether there are specific reasons outlined for withdrawing the plea and I have to consider whether the accused understood the nature of the charges and possible penalties, and whether he has a complete defense to the crime or was not guilty. Those are the factors that I have to consider here today.

{¶ 10} After hearing final arguments from counsel and reviewing the video footage, the trial court ultimately determined that there was not a reasonable basis for Barnes to withdraw his guilty plea and denied his motion. After finding Barnes guilty, the court sentenced him to community-control sanctions for five years.

{¶ 11} Barnes appealed to the Eighth District Court of Appeals, arguing that the trial court erred when it denied the motion to withdraw his guilty plea. The court of appeals overruled Barnes's assignment of error and affirmed the judgment of the trial court, holding that Barnes had failed to demonstrate a reasonable basis for withdrawing his guilty plea and that the trial court's judgment denying Barnes's motion was not unreasonable, arbitrary, or unconscionable. The court also denied Barnes's application for reconsideration and en banc consideration.

{¶ 12} Barnes filed a discretionary appeal in this court, and we accepted his sole proposition of law:

A defendant has a reasonable and legitimate basis to withdraw a guilty plea before sentencing upon learning of evidence that: (1) was previously withheld from the defendant; and (2) would have changed the defendant's decision to plead guilty. (Crim.R. 32.1 and *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), construed and applied).

*See* 163 Ohio St.3d 1508, 2021-Ohio-2481, 170 N.E.3d 906.

**Law and Analysis**

**{¶ 13}** "A presentence motion to withdraw a guilty plea should be freely and liberally granted." *Xie* at 527. A defendant does not, however, have an "absolute right" to withdraw his or her plea, even when a motion to withdraw is made before sentencing. *Id*. at paragraph one of the syllabus. Before ruling on a defendant's presentence motion to withdraw his plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea. *Id*. The determination whether there is a reasonable and legitimate basis for the defendant's request to withdraw his plea is "within the sound discretion of the trial court." *Id*. at paragraph two of the syllabus. Absent an abuse of discretion on the part of the trial court in making its ruling, its decision must be affirmed. *Id*. at 526.

**{¶ 14}** Crim.R. 32.1 states:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

**{¶ 15}** "However, the rule itself gives no guidelines for a trial court to use when ruling on a presentence motion to withdraw a guilty plea." *Xie*, 62 Ohio St.3d at 526, 584 N.E.2d 715. Crim.R. 11 governs guilty pleas and guilty-plea colloquies and ensures that a defendant understands that by pleading guilty, he is waiving numerous constitutional rights. *See, e.g*., *State v. Ballard*, 66 Ohio St.2d 473, 478, 423 N.E.2d 115 (1981) ("We hold that a guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for

obtaining witnesses in his behalf"). Crim.R. 11(C) also ensures that when a defendant pleads guilty, he is making that plea knowingly, intelligently, and voluntarily. "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).

{¶ 16} When the Eighth District reviewed the trial court's reasons for denying Barnes's motion to withdraw his plea, it applied a nonexhaustive list of factors from *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus (known as the "*Peterseim* factors"). The court of appeals explained that a trial court does not abuse its discretion when it denies a defendant's motion to withdraw his guilty plea when:

> (1) the defendant is represented by highly competent counsel, (2) the defendant was afforded a full hearing pursuant to Crim.R. 11 before he or she entered his plea, (3) after the motion to withdraw is filed, the defendant is given a complete and impartial hearing on the motion, and (4) the record reveals that the court gave full and fair consideration to the plea withdrawal request.

2021-Ohio-842, ¶ 22.

{¶ 17} In addition to the *Peterseim* factors, the Eighth District also considered four additional factors from *State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio 2269 (known as the "*Heisa* factors"):

> "(1) the motion was made in a reasonable time; (2) the motion stated specific reasons for withdrawal; (3) the record shows that the defendant understood the nature of the charges and the possible

penalties; and (4) the defendant had evidence of a plausible defense."

2021-Ohio-842 at ¶ 30, quoting *Heisa* at ¶ 19. Using an analysis based on this framework, the court of appeals held that the trial court's judgment denying the motion was not unreasonable, arbitrary, or unconscionable.

{¶ 18} Barnes asserts in this court that rather than apply this court's plea-withdrawal framework as given in *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, the Eighth District instead applied "a test that focuses too narrowly on * * * procedural protections—such as the rights explained to the defendant in the original plea hearing—and on the trial court's own view of the reasons for the requested plea withdrawal." Barnes argues that his assessment of the withheld evidence and how that evidence would impact his case is the sole factor that matters in determining whether he should be permitted to withdraw his guilty plea.

{¶ 19} Barnes also argues that to make a knowing and intelligent decision about whether to enter a guilty plea, a defendant must know what evidence weighs in his favor and what evidence does not. Barnes asserts that his decision to plead guilty was neither knowing nor intelligent because he had not seen the video footage with audio before pleading guilty. Barnes further asserts that had he seen the video footage with audio, he never would have pleaded guilty.

{¶ 20} The state argues that when the *Peterseim* factors and the *Heisa* factors are applied to this case, there is no support for permitting Barnes to withdraw his guilty plea. The state also asserts that acceptance of Barnes's proposition of law would drastically limit a trial court's discretion when ruling on a presentence motion to withdraw a guilty plea, and that even if this court were to adopt Barnes's proposed rule, the evidence in this case demonstrates that the withheld video footage with audio is not material evidence. We disagree.

**{¶ 21}** We begin by repeating what this court established three decades ago in *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715: a defendant's presentence motion to withdraw his guilty plea should be *freely and liberally granted*. This standard makes clear that when a defendant pleads guilty to one or more crimes and later wants to withdraw that plea before he has been sentenced, the trial court should permit him to withdraw his plea. This is the presumption from which all other considerations must start.

**{¶ 22}** As previously noted, a defendant does not have an absolute right to withdraw his guilty plea, *id*., and denying a defendant's motion to do so has been upheld in various circumstances, *id*. at 524-525 (the trial court's denial of the defendant's presentence motion to withdraw his guilty plea was upheld when the defendant relied on his defense attorney's erroneous advice regarding parole eligibility). *See also State v. Drake*, 73 Ohio App.3d 640, 645-646, 598 N.E.2d 115 (8th Dist.1991) (the trial court's denial of the defendant's presentence motion to withdraw his guilty plea was upheld when the defendant pleaded guilty on a mistaken belief that his aggravated-robbery charge would be reduced to robbery); *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988) (the trial court's denial of the defendant's presentence motion to withdraw his guilty plea was upheld when the defendant pleaded guilty because he thought that in exchange for pleading guilty, he would be sentenced to probation); *State v. Ganguly*, 10th Dist. Franklin No. 14AP-383, 2015-Ohio-845, ¶ 15 (the trial court's denial of the defendant's presentence motion to withdraw his guilty plea was upheld when the defendant asserted that his antianxiety medication rendered his plea unknowing, unintelligent, and involuntary).

**{¶ 23}** In the case before us, it is uncontroverted that (1) the person who fired the lethal bullet is unknown, (2) Barnes has always claimed he acted in self-defense, and (3) when Barnes agreed to plead guilty, he was unaware of the footage. Barnes believes, based on his military training, that the video footage with audio

supports his claim of self-defense and insists that he would not have pleaded guilty had he viewed and heard the footage before entering his plea. This case, therefore, is much different from the cases cited above, because here, the state cannot overcome the presumption that Barnes's motion to withdraw his guilty plea must be freely and liberally granted.[3]

{¶ 24} We also agree with Barnes that the *Peterseim* factors and the *Heisa* factors do not apply here. We therefore hold that when a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing. We further hold that the trial court abused its discretion when it denied Barnes's presentence motion to withdraw his guilty plea.

{¶ 25} On a final note, the state and the dissenting opinion question whether the video footage with audio actually substantiates Barnes's self-defense claim. The state and the dissent also assert that a defendant should not be the sole authority for evaluating whether certain evidence is material to his decision to plead guilty. This is true. And as previously noted, there have been many cases in which the defendant's presentence motion to withdraw his guilty plea was denied and the denial was upheld on appeal. In this case, however, we are more persuaded by the maxim that "such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make." *Wainwright v. Sykes*, 433 U.S. 72, 93, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), fn. 1 (Burger, C.J., concurring); *see also Martinez v. Court of Appeal of California*, *Fourth Appellate Dist.*, 528 U.S. 152, 165, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (Scalia, J., concurring in the judgment) ("Our system of laws generally presumes that the

---

3. The state argued that it would be prejudiced if Barnes was allowed to withdraw his plea after so much time had passed. But that passage of time may not be attributed to Barnes. Barnes found out about the video footage with audio the night before his sentencing hearing and filed a motion to withdraw his guilty plea the next day.

criminal defendant, after being fully informed, knows his own best interests and does not need them dictated by the State").

{¶ 26} Barnes pleaded guilty to the offense of involuntary manslaughter, but not because there was evidence that he actually committed the crime. This fact appears to be lost on the dissent in this case.[4] He pleaded guilty because he believed there was no evidence that corroborated his self-defense claim. And when he discovered the video footage with audio, there was then evidence that corroborated his self-defense claim. At all times, he maintains that he would not have pleaded guilty had he known about the footage with audio. Finally, Barnes moved to withdraw his guilty plea in a timely manner. For these reasons, we hold that (1) Barnes had a reasonable and legitimate basis for withdrawing his guilty plea,

---

4. The dissenting opinion declares, among other troubling statements, that this case does not involve a matter of great public interest, that the majority substitutes its opinion for that of the trial court without having viewed the video footage with audio merely to achieve a desired outcome, and that Barnes's motion to withdraw his guilty plea was simply due to a case of buyer's remorse or having a change of heart. To say that a case involving a criminal defendant's ability to withdraw his or her guilty plea is not a matter of great public interest is naïve at best and absurd at worst. Ohio law recognizes a plea of guilty as an admission to committing the charge to which one makes such a plea. Yet, for a host of reasons, defendants routinely plead guilty to having committed one or more crimes even when they did not commit those offenses. *See* Dervan and Edkins, *The Innocent Defendant's Dilemma: An Innovative Empirical Study of Plea Bargaining's Innocence Problem*, 103 J.Crim.L. & Criminology 1, 17 (2013) (explaining that numerous innocent defendants still enter into plea bargains). And yet, the dissent believes this matter is not one of great public interest. The serious considerations involved in whether to plead guilty in a criminal case, and subsequently whether to seek to withdraw that guilty plea, should not be evaluated as a game of gotcha once a defendant has entered a guilty plea. In other words, when a defendant in a criminal case must make a decision whether to plead guilty to having committed one or more offenses, that decision does not always simply turn on whether the defendant actually committed the offenses. Therefore, it is crucial for a defendant to have all the information that is available about his or her case in order to make an informed and intelligent decision before pleading guilty and ultimately being convicted. In this case, Barnes's evaluation of the newly discovered evidence changed the knowledge from which he was operating when he decided to plead guilty. It was *his* evaluation of that evidence, particularly with his background and training, that rendered the trial court's denial of his motion to withdraw unreasonable. Finally, Barnes received a five-year sentence of community control yet appealed the inability to withdraw his guilty plea all the way to this court. And still the dissent proclaims that Barnes's pretrial motion to withdraw his guilty plea was nothing more than buyer's remorse to having pled guilty in the first place?

(2) the trial court erred by not granting his motion, and (3) the court of appeals erred by affirming the trial court's judgment.

## Conclusion

**{¶ 27}** We reverse the judgment of the court of appeals and vacate Barnes's conviction.  We remand the matter to the trial court for further proceedings.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., concurs.

BRUNNER, J., concurs, with an opinion joined by GWIN, J.

FISCHER, J., dissents, with an opinion joined by KENNEDY and DEWINE, JJ., as to Parts II and III.

W. SCOTT GWIN, J., of the Fifth District Court of Appeals, sitting for DONNELLY, J.

_____

**BRUNNER, J., concurring.**

## I.  INTRODUCTION

**{¶ 28}** I join the majority opinion.  I write separately, however, because I would go further and would discard the nine-factor analysis that has been created and adopted by Ohio's courts of appeals in favor of a renewed focus on Crim.R. 32.1 and the guiding standards set forth by this court in *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992).

## II.  ANALYSIS

**{¶ 29}** Crim.R. 32.1 states:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

Crim.R. 32.1 contemplates two circumstances: when a defendant moves to withdraw before being sentenced and when a defendant having been convicted on a guilty or no-contest plea moves to withdraw it after sentencing "to correct manifest injustice." Crim.R. 32.1. In this case, appellant, Terry Barnes Sr., filed a presentence motion to withdraw before the court imposed its sentence.

{¶ 30} Crim.R. 32.1 does not specify a standard for judging a motion to withdraw a guilty or no-contest plea before a court imposes its sentence. Under the rules, additional requirements for this type of motion are contained in Crim.R. 47, requiring that the motion "be in writing unless the court permits it to be made orally," to "state with particularity the grounds upon which it is made," to "set forth the relief or order sought," and to "be supported by a memorandum containing citations of authority." Crim.R. 47. While a postsentence motion may be granted to "correct manifest injustice," for motions to withdraw a guilty or no-contest plea made before sentencing, Crim.R. 32.1, along with Crim.R. 47, impose only minimal procedural burdens. In recognition, this court has set forth the following standard for granting a presentence motion to withdraw a guilty plea:

> (1) A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.
>
> (2) The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court.

*Xie* at paragraphs one and two of the syllabus. In *Xie*, this court also stated that "a presentence motion to withdraw a guilty plea should be freely and liberally

granted." *Id.* at 527. Thus, a defendant does not have an "absolute right" to have his presentence motion to withdraw granted, *id*. at paragraph one of the syllabus, but such motions should be "freely and liberally granted" when a defendant has "a reasonable and legitimate basis for the withdrawal of the plea," *id*. at 527.

**{¶ 31}** In the absence of further substantive decisions from this court over the past 30 years, Ohio's appellate courts have articulated a series of considerations that they have held are potentially relevant to evaluating a trial court's decision-making in this area. Some find their origin in *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), which predates *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715; the Eighth District stated that a trial court does not abuse its discretion in denying a motion to withdraw a guilty plea when (1) the accused is represented by highly competent counsel, (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) the record reveals that the court gave full and fair consideration to the plea-withdrawal request. *Peterseim* at 213-214.

**{¶ 32}** Three years after *Xie*, other factors were articulated by the First District in *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995), *overruled on other grounds by State v. Sims*, 2017-Ohio-8379, 99 N.E.3d 1056, ¶ 15 (1st Dist.):

> We would also add: (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal * * * , (7) whether the accused understood the nature of the charges and possible penalties, and (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges.

Another factor—whether the state would be prejudiced if the defendant were permitted to withdraw his guilty plea—has usually been added to the analysis, for a total of nine factors. *See, e.g.*, *State v. Richter*, 8th Dist. Cuyahoga Nos. 46122 and 46123, 1983 WL 4787, *2 (Sept. 29, 1983); *State v. Dawson*, 2d Dist. Greene No. 97-CA-105, 1998 WL 135816, *3 (Mar. 27, 1998).

{¶ 33} Almost all of Ohio's appellate districts apply the nine-factor analysis that was used by the Eighth District in this case. *See, e.g.*, *State v. Couch*, 1st Dist. Hamilton No. C-060232, 2007-Ohio-654, ¶ 6 (referring to nine-factor analysis); *State v. Blankenship*, 2d Dist. Montgomery No. 29068, 2021-Ohio-3612, ¶ 11-21 (applying nine-factor analysis); *State v. Smith*, 3d Dist. Hancock Nos. 5-21-05 through 5-21-08, 2022-Ohio-742, ¶ 22-32 (applying nine-factor analysis); *State v. Harmon*, 4th Dist. Pickaway No. 20CA6, 2021-Ohio-2610, ¶ 12-35 (applying nine-factor analysis); *State v. Lewis*, 5th Dist. Delaware No. 20 CAA 06 0025, 2021-Ohio-530, ¶ 39-53 (applying nine-factor analysis); *State v. Euler*, 6th Dist. Wood No. WD-17-058, 2019-Ohio-235, ¶ 7-24 (applying nine-factor analysis); *State v. Jackson*, 7th Dist. Columbiana No. 19 CO 0037, 2021-Ohio-2497, ¶ 15-32 (applying nine-factor analysis); *State v. Pames*, 8th Dist. Cuyahoga No. 110647, 2022-Ohio-616, ¶ 29-42 (applying nine-factor analysis); *State v. Van Dyke*, 9th Dist. Lorain No. 02CA008204, 2003-Ohio-4788, ¶ 11-21 (applying fewer and different factors); *State v. Sow*, 10th Dist. Franklin No. 17AP-772, 2018-Ohio-4186, ¶ 22-32 (applying nine-factor analysis); *State v. Pudder*, 11th Dist. Portage No. 2013-P-0045, 2014-Ohio-68, ¶ 18-23 (applying nine-factor analysis); *State v. Owens*, 12th Dist. Preble No. CA2021-07-007, 2022-Ohio-160, ¶ 30 (referring to nine-factor analysis).

{¶ 34} According to the nine-factor analysis, an appellate court is more likely to reverse a trial court's judgment denying a motion to withdraw a guilty plea if the defendant (1) was not represented by competent counsel, (2) was not given a proper colloquy in accordance with Crim.R. 11, (3) was not afforded a complete

and impartial hearing on the motion, and/or (4) was not given full and fair consideration when asking to withdraw a plea. Similarly, an appellate court is more likely to affirm a trial court's judgment denying a motion to withdraw a guilty plea if the defendant (5) did not make the motion within a reasonable amount of time, (6) did not state specific reasons for withdrawal, (7) understood the nature of the charges and the possible penalties, (8) was likely guilty or without a complete defense, and/or (9) would have created prejudice to the state's case by withdrawing his guilty plea. We note that *Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863, the forebearer of a number of these factors, predates this court's decision in *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, by 12 years, and was cited in *Xie*, yet we did not adopt the *Peterseim* factors in *Xie*, *see Xie* at 526. Nor, in the 30 years post-*Xie* have we adopted the *Peterseim*/*Fish* factors that appear to be commonly (or nearly uniformly) used by the intermediate appellate courts. Justice Donnelly commented on this issue in dissenting from a decision to decline jurisdiction in *State v. Harmon*, 165 Ohio St.3d 1465, 2021-Ohio-4109, 177 N.E.3d 279. He advocated either adopting the *Peterseim*/*Fish* factors or adopting our own factors. *Id.* at ¶ 4 (Donnelly, J., dissenting). The dissenting opinion in this case also remarks on the need to take a position on the factors. Dissenting opinion, ¶ 47. I agree that clarity is needed. However, I do not believe that the potential convenience of weighing formulaic factors always lends itself to just results.

{¶ 35} If this case demonstrates anything, it is that a factor-weighing approach can become a mechanistic exercise in which courts are in danger of losing sight of why we do what we do. Justice has a lot to do with what is truth in very human situations. As a result, judges and justices are often truth seekers in matters that are complicated, messy, and convoluted. These matters often stretch judges to envision and understand different ways of life than what they may have experienced. They must nevertheless remain open-minded. And truth-seeking in this context relates to the integrity of trial procedures, the fairness of the calls on

the admission or exclusion of evidence, heeding the need to recuse to avoid conflict or its appearance, ensuring the voir dire process enables the seating of a fair and impartial jury, and in the context of a presentence motion to withdraw a guilty plea, whether the motion, made orally or in writing, is based on a reasonable and legitimate explanation.

{¶ 36} Here, Barnes had competent counsel. He was accurately informed of and understood the consequences of his plea. He was provided with a full and proper Crim.R. 11 colloquy. He filed the motion to withdraw his guilty plea the day scheduled for his sentencing hearing. The trial court held hearings on the matter, and no bias or partiality was evident concerning Barnes. But all that serves to distract from the fact that it was Barnes's decision alone to either plead guilty or to exercise his right to a trial. *See* Prof.Cond.R. 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision as to a plea to be entered, whether to waive a jury trial, and whether the client will testify"). When he learned that he had made his decision based on incomplete information, and he reconsidered, he sought to withdraw his plea—and this occurred before sentencing. Why was this not a "reasonable and legitimate basis for the withdrawal of the plea"? *Xie* at paragraph one of the syllabus. And even though Barnes did not "have an absolute right to withdraw a guilty plea prior to sentencing," Rule 32.1 contains no such factors as have been developed by courts of appeals; rather, caselaw indicates that such motions should be "freely and liberally granted," *Xie* at 527. While the nine-factor analysis is tempting to use, whether for consistency or for convenience and speed, Crim.R. 32.1 does not indicate that any such factors or the weighing of them is necessary. In fact, the nine-factor analysis actually distracts from Crim.R. 32.1 and *Xie*'s basic message: when a defendant files a presentence motion to withdraw his plea and articulates a reasonable and legitimate basis as to why, the trial court should grant the motion.

**{¶ 37}** The state and its amicus curiae, Office of the Ohio Attorney General, point out that Barnes did not, before appealing to this court, facially challenge the propriety of the judge-made factors.[5]  Rather, Barnes argued in the court of appeals that the trial court should have weighed some of those factors more heavily in his favor.  Moreover, the proposition of law that we accepted does not address the nine-factor analysis (or the trial court's five-factor analysis):

> A defendant has a reasonable and legitimate basis to withdraw a guilty plea before sentencing upon learning of evidence that: (1) was previously withheld from the defendant; and (2) would have changed the defendant's decision to plead guilty.  (Crim.R. 32.1 and *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), construed and applied).

*See* 163 Ohio St.3d 1508, 2021-Ohio-2481, 170 N.E.3d 906.  Yet, we have stated that "if we must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, we will do so."  *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993).

**{¶ 38}** This court decided *Xie* 30 years ago, and our silence is what has allowed the various appellate courts to create and apply this nine-factor weighing analysis to the point that this "test" has overshadowed the basic principles established by *Xie* and Crim.R. 32.1.  The nine-factor analysis should not overshadow the exercise of judicial discretion that is needed to analyze a presentence motion to withdraw a guilty plea in accordance with the basic

---

5.  "As a general rule, this court will not consider arguments that were not raised in the courts below."  *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993).

principles established by *Xie* and Crim.R. 32.1. For these reasons, I would hold that the nine-factor analysis should no longer be used.

**{¶ 39}** Applying the basic principles established by *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, and Crim.R. 32.1 to this case without encumbering the decision by weighing nine factors leads to the conclusion that Barnes should have been permitted to withdraw his guilty plea.

### III. CONCLUSION

**{¶ 40}** Ohio's courts of appeals nearly uniformly use the nine-factor analysis that has been developed over the last 30 years when reviewing a trial court's judgment granting or denying a presentence motion to withdraw a guilty plea. The nine-factor analysis should not overshadow the exercise of judicial discretion needed to analyze a presentence plea withdrawal in accordance with the basic principles established by *Xie* and Crim.R. 32.1.

**{¶ 41}** In *Xie*, this court stated that presentence motions to withdraw a guilty plea "should be freely and liberally granted." *Id*. at 527. Accordingly, when a defendant presents a reasonable and legitimate basis in a presentence motion to withdraw his guilty plea, it is to be freely and liberally granted. Freely and liberally granting the defendant's presentence motion to withdraw his guilty plea requires the trial court to exercise discretion in its judgment. And that judgment should not be slighted by making a trial court essentially answer yes-and-no questions to come up with a weighted score for a matter that requires the court to engage in human observation, reflection on accumulated experience, and discretion that only a trial court is in the position to exercise to reach a final judgment on the matter.

**{¶ 42}** Thus, I join the majority opinion and offer the above additional suggestions for consideration.

GWIN, J., concurs in the foregoing opinion.

_____

**FISCHER, J., dissenting.**

{¶ 43} Appellant Terry Barnes Sr.'s discretionary appeal presents neither a constitutional question nor a matter of great public interest and it certainly does not clarify an unsettled area of the law. By resolving Barnes's appeal, the majority opinion engages in so-called error correction by finding that, despite the trial court's thoughtful and thorough consideration as to whether Barnes presented a reasonable and legitimate basis to withdraw his guilty plea, it abused its discretion. Because we should not have accepted jurisdiction over this discretionary appeal and because we should not cast aside our appellate standard of review to reach the desired result of allowing Barnes to withdraw his guilty plea, I must respectfully dissent.

## I. This case should be dismissed as having been improvidently accepted

{¶ 44} Barnes's discretionary appeal is all about whether the trial court erred in denying his presentence motion to withdraw his guilty plea based on his assertion that his defense counsel did not properly inform him of a surveillance video with audio ("the gunshot video") that possibly supported his self-defense claim. This appeal does not present a constitutional question. This appeal does not present a matter of great public interest. And this appeal does not resolve an unsettled area of the law. Rather, this appeal is purely a plea for this court to engage in "error correction."

{¶ 45} The majority opinion criticizes this dissent in a lengthy footnote claiming that it is naïve or absurd to maintain that *this case* does not present a matter of great public interest simply because it deals with a guilty plea. Contrary to the majority opinion, not every case that involves a guilty plea will present a matter of great public interest. Rather, the majority opinion forgets this court's role and thrusts itself on a soapbox to speak about matters of innocence to deflect from the fact that there are major flaws with *this case* that remove it from any category of cases that we have the authority to resolve.

**{¶ 46}** Here, Barnes claims that he would not have pleaded guilty had he seen a piece of evidence that his defense counsel had failed to show him—a piece of evidence that (1) does not exist in our record and (2) a description of which is not even slightly more persuasive than the video evidence of the actual shooting that Barnes saw numerous times, and had experienced first-hand—both of which could have supported his self-defense claim. This case is about a defendant who participated in a shootout that left two people injured and one dead and who had a viable self-defense claim. But he also chose to plead guilty to a probational offense to avoid the possibility of being convicted of murder and having to serve a life sentence. It is about Barnes's change of heart to plead guilty, not about the gunshot video that allegedly changed his view of this case. That fact is made clear by reviewing the procedural posture of this case, as outlined in the merits section below. This case is about the trial court's review of those facts and its decision. And in making its decision to deny Barnes's motion to withdraw his guilty plea, the trial court conducted a thorough analysis and followed our decision in *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). This case, as resolved by the majority opinion, is nothing more than alleged error correction: the majority merely disagrees with the trial court's judgment denying Barnes's motion to withdraw his guilty plea.

**{¶ 47}** This conclusion is clearly evidenced by the majority opinion's analysis. The majority opinion neither clarifies (1) our decision in *Xie*, nor (2) the balancing test that is consistently applied by the appellate courts, *see State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980) (the court should consider whether the defendant was represented by highly competent counsel; whether the defendant was afforded a full Crim.R. 11 hearing before entering his plea; after the motion to withdraw was filed, whether the defendant was given a complete and impartial hearing on the motion; and whether the trial court gave full and fair consideration to the plea-withdrawal request), *State v.*

*Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio 2269, ¶ 19, (along with the *Peterseim* factors, the court added that the court should consider whether the motion was made within a reasonable time, set out specific reasons for the withdrawal, and whether the accused was perhaps not guilty of or had a complete defense to the charge or charges). Without taking the opportunity to provide guidance to our appellate courts, either by adopting or rejecting the *Peterseim* and *Heisa* factors or explaining what factors should be considered in deciding a motion to dismiss, the majority opinion acquiesces to Barnes's request for error correction.

**{¶ 48}** Error correction is not a valid reason for this court to accept jurisdiction. *See State v. Azeen*, 163 Ohio St.3d 447, 2021-Ohio-1735, 170 N.E.3d 864, ¶ 53 (Stewart, J., dissenting) (deciding an appeal serves no real purpose when the majority opinion does not announce or clarify a rule of law). Thus, if this court is not going to provide clarity to a well-settled area of the law or guide the lower courts on how to conduct an analysis, then the case should be dismissed as having been improvidently accepted.

## II. The trial court did not abuse its discretion in denying Barnes's motion to withdraw his guilty plea

**{¶ 49}** But even assuming arguendo only that error correction was a good enough reason to accept jurisdiction in this case, there is no error to correct. After a thorough review of the record, it is clear that the trial court acted within its discretion when it denied Barnes's motion to withdraw his guilty plea. And the Eighth District Court of Appeals used a multifactored test that has been used by Ohio's appellate courts and found that the trial court had not abused its discretion. 2021-Ohio-842, ¶ 23-54. In reversing the trial court's decision and granting Barnes's motion to withdraw his guilty plea, the majority opinion substitutes its assessment of the importance of the gunshot video for that of the trial court's and then disregards the standard of review set forth by this court in *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, all without having viewed the gunshot video at issue.

**{¶ 50}** There is no doubt that a presentence motion to withdraw a guilty plea should be freely and liberally granted. *Id*. at 526. But those decisions are within the sound discretion of a trial court. *Id.* at paragraph two of the syllabus. Reversal of the trial court's decision is appropriate only when the trial court's decision is unreasonable, unconscionable, or arbitrary, not simply when the reviewing court disagrees with the trial court's resolution of an issue. *Id*. at 526, 527; *see also Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978) (unless the record demonstrates that a trial court acted unfairly or unjustly in denying the defendant's motion to withdraw, the court did not abuse its discretion). In *Xie*, we held that the trial court did not abuse its discretion when it denied the defendant's presentence motion to withdraw his guilty plea because it held a hearing on the motion at which it carefully considered "all the circumstances surrounding the entering of the plea." *Id*. at 527.

**{¶ 51}** Here, the trial court followed this court's holding in *Xie*: it held a hearing at which it carefully considered all the circumstances surrounding Barnes's plea. Actually, the trial court held *two hearings* on Barnes's motion to withdraw his guilty plea. And the court considered Barnes's reasons for moving to withdraw his plea, the timeliness of his motion, the procedural history of his plea discussions, whether his plea was made consistently with Crim.R. 11, the competency of Barnes's counsel, and the possible prejudice to the state if his motion was granted. The trial court also fully considered the importance of the gunshot video to Barnes's self-defense claim by listening to testimony from Barnes and his four former attorneys and then viewing the gunshot video. The trial court not only followed this court's guidance in *Xie*, but it also considered the factors from *Peterseim*, 68 Ohio App.2d at 214, 428 N.E.2d 863, and *Heisa*, 2015-Ohio 2269, at ¶ 19, in making its decision. From the record, it is apparent that the trial court did everything in its power to fairly evaluate Barnes's motion to withdraw his guilty

plea. It simply determined that the circumstances weighed in favor of denying Barnes's motion.

{¶ 52} Contrary to *Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, the majority opinion disregards the trial court's careful consideration of all the facts and circumstances in this case and instead focuses on the trial court's alleged failure to adequately consider Barnes's evaluation of the gunshot video. The majority opinion concludes that the trial court's decision to deny Barnes's motion was unreasonable and an abuse of discretion because Barnes believes that the gunshot video substantiates his self-defense claim. The majority opinion abandons the abuse-of-discretion standard of review that this court established in *Xie* and reviews the trial court's decision de novo. While certain evidence may have an impact on a defendant's decision to plead guilty, it is baffling to me how the majority opinion in this case has determined that the gunshot video significantly affected Barnes's guilty plea, especially since no member of this court has reviewed that video.

{¶ 53} This court has access to a total of 139 videos from this case, but none of those videos contain audio. So, the record in this case does not contain the gunshot video—i.e., the very piece of evidence upon which Barnes's entire argument relies. Indeed, it is impossible for this court to determine whether the gunshot video would have been material to Barnes's defense because we do not have access to it. For that reason alone, we should reject Barnes's argument that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

{¶ 54} Furthermore, Barnes—as the appellant—has the burden to ensure that all the evidence that is needed to resolve his appeal is before the court. *See* App.R.10(A); S.Ct.Prac.R. 15.01(A). Barnes failed to include the gunshot video when he filed his motion to withdraw his guilty plea. And no one in this case has asked to supplement the record with the gunshot video. So, since we cannot review the gunshot video, we cannot evaluate Barnes's claim. Consequently, regularity of

the trial court's proceedings is presumed, *Natl. City Bank v. Beyer*, 89 Ohio St.3d 152, 160, 729 N.E.2d 711 (2000), and we must affirm the judgment of the Eighth District Court of Appeals.

{¶ 55} Because the gunshot video is not contained within this record, the majority opinion's resolution of Barnes's proposition of law is problematic. The majority opinion takes Barnes's assertion that the gunshot video is material to his case and serves as the only evidence to substantiate his self-defense claim at face value to justify finding that Barnes's decision to file the motion to withdraw his guilty plea was more than just a change of heart and that the trial court abused its discretion in denying the motion. But when a trial court's judgment is supported by some competent, credible evidence, that judgment must be upheld. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Here, the only videos we have in the record support the trial court's rejection of Barnes's argument that the gunshot video would have made a difference to his decision to enter a plea of guilty. The majority opinion, through its lack of review, opens the door for defendants to successfully move to withdraw their guilty pleas based on their assertions that had they seen a particular piece of evidence held by their defense counsel, regardless of the materiality of that evidence, that they would not have pleaded guilty.

{¶ 56} The record before us demands that we find that the trial court did not abuse its discretion in denying Barnes's motion to withdraw his guilty plea. It is not our role as "an appellate court to conduct a de novo review of a trial court's decision in these circumstances," *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715, especially when we do not even have the most crucial piece of evidence before us.

**III. The gunshot video would not have supported Barnes's self-defense claim**

{¶ 57} It is bad enough that the majority opinion engages in judicial activism to right what it perceives to be a wrong. It is even more unfortunate that it does so when the record does not even support this perceived wrong. As

discussed earlier, we do not have access to the gunshot video that Barnes claims his counsel withheld from him and that was material to his case. But even if we considered Barnes's description of the gunshot video to conduct our analysis, the existence of the gunshot video does not change any of the circumstances that were already known to Barnes at the time that he pleaded guilty. The trial court properly rejected his argument that the gunshot video mattered to his self-defense claim and to his decision to plead guilty. Therefore, the trial court's decision was not arbitrary, unreasonable, or unconscionable and does not constitute an abuse of discretion.

A. *Barnes pleads guilty to involuntary manslaughter with the knowledge that the incident was caught on camera*

{¶ 58} Barnes was originally charged with one count of murder, one count of voluntary manslaughter, three counts of felonious assault, and two counts of discharging a firearm on or near a prohibited premises—all with firearm specifications—due to his participation in a shootout at a gas station that left two people injured and one person dead. Barnes faced the possibility of serving a lifetime prison term.

{¶ 59} But from the beginning of his case, starting at his bail hearing, Barnes claimed that he had acted in self-defense. One of his defense attorneys even asserted on the record that Barnes was approached and confronted by Jeffrey McLaurin while McLaurin had a gun in his hand—a claim that seems to have been caught by one of the surveillance cameras at the gas station.

{¶ 60} However, eight months after his bail hearing and despite having a self-defense claim, Barnes chose to plead guilty to one count of involuntary manslaughter in exchange for the dismissal of all other counts and specifications. This meant that Barnes exchanged his opportunity to present his self-defense claim and the uncertainty of possibly being convicted of seven felony offenses, one of which carried a lifetime prison term, for the certainty of being convicted of only

one felony offense that carried no mandatory prison or jail time.  And Barnes did so with the knowledge that he had participated in the shootout and that the shootout had been caught on camera.

*B.  Barnes moves to withdraw his guilty plea, but alters his reasoning throughout the proceedings*

**{¶ 61}** Within one month after pleading guilty to involuntary manslaughter, Barnes moved to withdraw his guilty plea.  He claimed that his decision to withdraw his guilty plea was not simply a "change of heart."  Rather, Barnes maintained that because the surveillance footage showed McLaurin running at Barnes with McLaurin's gun drawn, Barnes acted in self-defense.

**{¶ 62}** In his motion, Barnes does not mention that his attorneys had failed to provide him with the gunshot video—rather, he claims that the evidence showed that he was not the aggressor and that he had acted in response to McLaurin escalating an argument with a gun.  It was only in his supplemental motion filed a week later that Barnes then claimed that he had "never viewed" the gunshot video prior to pleading guilty.  However, Barnes's claim pertaining to the gunshot video does not hold up.

**{¶ 63}** Not only did Barnes know that he had a self-defense claim when he pleaded guilty, but he had seen the relevant videos that showed his interactions with the deceased victim and with McLaurin.  At Barnes's November 15 hearing, Barnes stated that he "didn't get a chance to review all of the discovery."  He stated that there "was a large portion of the videotapes that had not been disclosed to [him] until after the plea deal."  But then, at Barnes's December 18 hearing, he admitted that he had viewed these videos.  And this fact was confirmed by his previous counsel, two experienced public defenders.

**{¶ 64}** Barnes pivoted and asserted that he had not seen the gunshot video prior to entering his plea.  Barnes maintained that because the gunshot video "changed the fact who shot first," had he seen that video, he never would have

pleaded guilty. Barnes believed that the gunshot video proved that McLaurin shot first, thereby solidifying his self-defense claim.

{¶ 65} This transition from focusing on the *Heisa* motion-to-withdraw factors and not even mentioning the gunshot video in his initial motion to withdraw his guilty plea to asserting that defense counsel did not show him "a large portion of the videotapes," then to defense counsel not showing him the gunshot video, demonstrates that Barnes merely had buyer's remorse or a change of heart. The transition is indicative that the gunshot video was likely not the true reason that Barnes moved to withdraw his plea. The gunshot-video argument mattered only after his main arguments had been rejected by the trial court and his broad evidentiary argument had been debunked. The trial court was well within its discretion to deny a motion to withdraw a guilty plea on those grounds.

*C. The gunshot video does not legitimize Barnes's self-defense claim*

{¶ 66} But even if the gunshot video as described in the record was the main reason Barnes moved to withdraw his plea, which it was not, the gunshot video does not legitimize Barnes's self-defense claim. Especially not when considering that Barnes had watched relevant surveillance footage prior to pleading guilty.

{¶ 67} To evaluate whether the gunshot video serves as a reasonable and legitimate reason for Barnes to withdraw his guilty plea, it is necessary for us to review what constitutes self-defense in Ohio. At the time that Barnes proffered his guilty plea, a defendant was required to establish (1) that he was not at fault in creating the situation, (2) that he believed that he was in imminent danger or great bodily harm and that the only way to escape danger was the use of deadly force, and (3) that he did not violate a duty to retreat. *State v. Jackson*, 22 Ohio St.3d 281, 283, 490 N.E.2d 893 (1986).

{¶ 68} Contrary to the majority opinion that "there was no evidence that corroborated [Barnes's] self-defense claim," prior to pleading guilty, Barnes and his counsel believed that surveillance footage showed that (1) McLaurin was the

aggressor and (2) McLaurin approached Barnes and struck him with a gun, giving Barnes a reasonable belief that he was in danger. Barnes watched the surveillance footage with his attorneys. This evidence could corroborate his self-defense claim. The gunshot video, which arguably indicated that McLaurin shot first would be relevant only if Barnes believed that he was in danger after the initial shot was fired; but Barnes claims that he believed he was in danger once McLaurin struck him with a gun. Indeed, it is doubtful that the audio of a gun firing is more persuasive than the surveillance video of the incident itself, especially since the audio was allegedly caught by an inside camera.

{¶ 69} Thus, the trial court was not unreasonable in its belief that the gunshot video did not legitimize Barnes's self-defense claim. The trial court also was not unreasonable in deciding that the gunshot video could not have changed Barnes's evaluation of his entire case. Especially because self-defense is about escalation, not necessarily about who pulled the trigger first. *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). Even one of Barnes's former attorneys would have still recommended that Barnes plead guilty to involuntary manslaughter, a probational offense, rather than take a chance on his self-defense claim at trial for murder. A review of the record in this case shows that the majority opinion is wrong for determining that the gunshot video is enough by itself for Barnes to be able to withdraw his guilty plea. Because the trial court did not abuse its discretion, we should affirm the judgment of the Eighth District Court of Appeals.

## IV. Conclusion

{¶ 70} The majority opinion (1) oversteps its bounds, (2) ignores the standard of review that this court developed 30 years ago, and (3) engages in perceived error correction just to allow Barnes to withdraw his guilty plea. Because this discretionary appeal resolves no conflict in the law, is not a matter of great public interest, and does not resolve a constitutional question, it should have been

deemed as improvidently accepted. And from the record on appeal, it is apparent that the trial court did not abuse its discretion. Therefore, I must respectfully dissent.

KENNEDY and DEWINE, JJ., concur in Parts II and III of the foregoing opinion.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, for appellee.

Milton & Charlotte Kramer Law Clinic, Case Western Reserve University School of Law, Andrew S. Pollis, and Joseph Shell, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Mathura J. Sridharan, Deputy Solicitor General, urging dismissal of the appeal as having been improvidently accepted for amicus curiae, Ohio Attorney General Dave Yost.

_____