[Cite as *State v. Pampley*, 2024-Ohio-251.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

     Plaintiff-Appellee,          :

                                  Nos. 112672 and 112673

     v.                                    :

HIGHPRIEST LEWIS PAMPLEY,        :

     Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 25, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-669855-A and CR-22-673970-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Dominic Neville, Assistant Prosecuting Attorney, *for appellee.*

The Goldberg Law Firm L.L.C. and Adam Parker, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} In this consolidated appeal, defendant-appellant Highpriest Lewis Pampley ("Pampley") appeals from the trial court's order denying his motion to withdraw his guilty plea. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} This case stems from two separate criminal cases, both of which were resolved by guilty plea.

{¶ 3} In Cuyahoga C.P. No. CR-22-669855-A, on May 12, 2022, a Cuyahoga County Grand Jury indicted Pampley[1] on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), one count of robbery in violation of R.C. 2911.02(A)(1), and one count of failure to comply in violation of R.C. 2921.331(B) with a furthermore specification. The robbery and aggravated robbery counts both carried one- and three-year firearm specifications. These charges arose from a carjacking where Pampley allegedly stole a woman's car at gunpoint and then fled from police.

{¶ 4} In Cuyahoga C.P. No. CR-22-673970-A, on September 6, 2022, a Cuyahoga County Grand Jury indicted Pampley[2] on three counts of rape in violation of R.C. 2907.02(A)(2), one count of kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification, and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). There is minimal information in the record

---

[1] The indictment lists the defendant as High Priest Lewis-Pampley rather than Highpriest Lewis Pampley. At a pretrial hearing on March 23, 2023, Pampley confirmed that his full name is Highpriest Aaron Lewis Pampley.

[2] The indictment lists the defendant as Highpriest Aaron Pampley Jr. rather than Highpriest Lewis Pampley.

regarding the events from which these charges arose; the charges stem from an alleged sexual assault that occurred in 2018.

{¶ 5} Pampley initially pleaded not guilty to both indictments. On March 13, 2023, the court held a change-of-plea hearing. At this hearing, the assistant prosecuting attorney placed the plea offer on the record and the court engaged in the following preliminary discussion with Pampley, in relevant part:

> PAMPLEY: So look, this is my worry, right? It's my worry that I'm going to cop out, but with the Reagan Tokes, you feel me, I'm going to get in trouble and end up having to do that time because that's just — like, Friday, I got assaulted by a CO.
>
> THE COURT: So I understand. So you're worried — like, listen, you get four years Reagan Tokes time, you're worried that you'll get all that time.
>
> PAMPLEY: Yeah.
>
> THE COURT: So a couple things. One, Reagan Tokes is pending before the Supreme Court, and they may get rid of it. They may say it's unconstitutional, illegal. And you would only have four years of Reagan Tokes if you get a maximum sentence.
>
> Reagan Tokes time is shorter depending on your sentence. Let's say you got a four-year sentence. That Reagan Tokes time is only two years. It's not necessarily four years.
>
> * * *
>
> PAMPLEY: So if I take this plea, right, so like, if you tell me I get some on the back end, I'm not talking the high end, so say you sentence me to three, right? I'm going to say four. Say you sentence me to four, right? So I'm going to get out after this four or —
>
> THE COURT: You're actually probably going to get out in less than four because you'll get credit for the time you've been sitting.
>
> PAMPLEY: So I can get time served for the year?

THE COURT: You will definitely get credit for all the time you've been sitting, and under Reagan Tokes, if you behave yourself, have great conduct, you can earn time off your sentence of five to 15 percent.

PAMPLEY: I know about going to school and getting an OPI, and stuff like that. I know how to get good days. I'm just more skeptical of the fact that somebody do something and they say that I did it, and you know, birds of a feather flock together, and I'm going to be left out.

THE COURT: You know, Mr. Pampley, I can't forecast what's going to happen once you're in prison. I don't have any control over that. I can tell you if, in your example, you get four years, you will get credit for the time served.

PAMPLEY: So I would have three left?

THE COURT: You would have three left.

The Reagan Tokes time would be there, but that would be subject to it still being constitutional, and then they would have to conduct a hearing in order to keep you there before they can keep you in there.

PAMPLEY: So it's three to five or three to nine right now?

THE COURT: It's three to nine years, and I told you, your counsel, I'll run everything concurrent.

Also, a benefit of this is that in Case Number -970, you're pleading to a non-sex offense, so you don't have to register as a sex offender.

PAMPLEY: Oh, that's cool.

THE COURT: Yeah. It's a big change in the plea.

So, I mean, I'm sure your counsel told you, there's good things about this and bad things.

I don't know what happened with your case. I have these cases. I have the filings by your counsel. You know whether or not, for the [aggravated] robbery case, what you did or didn't do. You know that.

Your counsel knows what the State can prove in court. If your counsel said there's a likelihood you're found guilty, then you should probably take this plea. If your counsel told you that there's a good chance, you know, you might be found not guilty, then go forward at trial.

You've got to think about that, what's the likelihood of you being successful, at trial versus not being successful at trial, and you have to weigh those.

PAMPLEY: Right. I mean, I'll take the plea. I'm, like, way scared on the Reagan Tokes end, but on your end, I see what you're saying, though. I'll take the plea, but whatever happens on the back end, you don't got nothing to do with it, for real.

DEFENSE COUNSEL: He just doesn't like the uncertainty and not having control over —

THE COURT: Yeah. Mr. Pampley, I wish I could tell you more. I'm telling you straight up, I have zero control of that aspect. I have zero control over that.

PAMPLEY: So that's why I said I'll take the plea. I see what you're trying to do on your end. I'm just going to have to battle that on the back end.

THE COURT: So do you want to go forward with the plea then?

PAMPLEY: Yeah.

**{¶ 6}** The court then proceeded to engage in a formal Crim.R. 11 plea colloquy with Pampley.

**{¶ 7}** Pampley ultimately pleaded guilty in case 669855 to one count of robbery, a felony of the second degree, and the attendant one-year firearm specification; one count of attempted failure to comply, a felony of the fourth degree; and one count of receiving stolen property, a misdemeanor of the first degree. In the case 673970, Pampley pleaded guilty to one amended count of kidnapping, a felony of the second degree. The remaining counts and specifications against Pampley were dismissed.

{¶ 8} The court ordered a presentence-investigation report ("PSI") and mitigation-of-penalty report from the court psychiatric clinic.

{¶ 9} On April 13, 2023, the court held a sentencing hearing. The court stated at the outset of the hearing that it had reviewed the PSI, mitigation-of-penalty report, a reintegration plan provided by defense counsel, and a social, mental, educational, and psychiatric history synopsis provided by defense counsel. Defense counsel then informed the court that Pampley wished to withdraw his plea and potentially hire different counsel. Pampley addressed the court as follows:

> Reasons, reasons to. During my plea bargain I was going through mental, mental trauma and physical trauma and I was not in the right state of mind when I took the plea due to getting assaulted by a CO within the jail. And I was not stable. And different other conditions within the jail. And I was not in the right state of mind when I took the plea.
>
> The last thing that I knew about a plea was three to five. I really wasn't conscious. And we was talking at the last hearing when you was saying — when I was [pleading] guilty to the charges I thought I was going home. That's what I was hearing in my head. I wasn't present and really know what's going on.
>
> So I would like to ask you to withdraw my plea today, and have a fair chance to do what I got to do and do the right thing. I would like to be on the record also.

The court confirmed that Pampley did not want to place anything else on the record regarding his oral motion to withdraw his plea. The court then heard from defense counsel and the assistant prosecuting attorney.

{¶ 10} Following the parties' arguments on the motion, the court stated:

> The court will note several items for the record. One, that the plea occurred on the trial date of Mr. Pampley. We were set for trial.

Secondly, the court engaged in a lengthy plea colloquy with Mr. Pampley in which the court stated unequivocally what Mr. Pampley was facing in terms of prison time.

There were further conversations regarding consecutive versus concurrent and Reagan Tokes. It was abundantly clear at the time of the plea hearing that Mr. Pampley was going to be sentenced to a term of incarceration in prison because of the plea to the one year firearm specification, in addition to the counts in case number 669855, the felony of the second degree, robbery, the attempted failure to comply, felony of the fourth degree, and then the misdemeanor, receiving stolen property.

It was clearly placed on the record that Mr. Pampley would be serving a prison sentence. And so that was explained to him clearly. Furthermore, the court went through a deliberate criminal rule colloquy prior to asking the defendant whether or not he wanted to plead guilty, advised him of his constitutional rights, went through the maximum penalties, went through post release control, and went through Reagan Tokes, and the maximum indefinite sentence and the qualifying offenses.

Furthermore, the court clearly asked Mr. Pampley if he understood what was happening in court on that day. He stated that he did.

Furthermore, prior to today's sentencing hearing the court reviewed the presentence investigation report that was completed on April 13th and the mitigation of penalty report that was completed on April 12th.

In the presentence investigation report there was no mention by the defendant during his interview that he was suffering from any mental calamities on the date of his plea.

Furthermore, when he was speaking with a physician for his mitigation of penalty report, psychiatric physician, Dr. Hernandez, M.D., he made no complaints at all regarding suffering any mental anguish or any physical pain in the immediate days, hours, preceding his guilty plea on March 23rd of 2023.

The court finds that there is no reasonable and legitimate basis for the defendant to withdraw his guilty pleas in both case numbers 669855 and 673970, and will go forward with sentencing at this juncture.

{¶ 11} The court then proceeded to sentencing. The assistant prosecuting attorney addressed the court, summarizing the facts that resulted in Pampley's charges and Pampley's criminal history before requesting the court impose a minimum prison term of nine years. Defense counsel then addressed the court, beginning by objecting to the imposition of the Reagan Tokes Law. Defense counsel went on to summarize some of Pampley's personal history in mitigation, ultimately requesting a sentence closer to the minimum prison term, in addition to requesting that Pampley's personal history and mitigation report be sent with him to the Ohio Department of Rehabilitation and Correction. Pampley then addressed the court and apologized to the victim who was present at the sentencing hearing.

{¶ 12} The court sentenced Pampley to an aggregate prison sentence of seven to 10 years.

{¶ 13} Pampley filed a timely notice of appeal in both cases and presents two assignments of error for our review:

> I. The trial court abused its discretion in denying appellant's motion to withdraw his guilty pleas.

> II. Mr. Pampley's indefinite sentence is unconstitutional.

**Law and Analysis**

**I. Motion to Withdraw Guilty Plea**

{¶ 14} In his first assignment of error, Pampley argues that the trial court abused its discretion when it denied Pampley's presentence motion to withdraw his guilty plea because Pampley made a prima facie claim that his guilty pleas were not

knowing, intelligent, and voluntary. Pampley also argues that the court did not afford him a full and impartial hearing on his motion.

{¶ 15} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). It is well established, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

{¶ 16} The decision to grant or deny a presentence motion to withdraw a guilty plea is within the trial court's discretion. *Id.* at paragraph two of the syllabus. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id.* at 527. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 17} Courts have traditionally considered nine factors when reviewing a trial court's decision denying a defendant's presentence motion to withdraw a guilty plea. *State v. Hopkins*, 8th Dist. Cuyahoga Nos. 112430 and 112704, 2023-Ohio-4311, ¶ 13. Those factors include whether a defendant was (1) represented by competent counsel, (2) given a full Crim.R. 11 hearing before he entered the plea, (3) given a complete hearing on the motion to withdraw, and (4) the record reflects that the court gave full and fair consideration to the plea withdrawal request. *Id.*, citing

*State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus.

{¶ 18} Additionally, consideration is given to whether (5) the motion was made in a reasonable time, (6) the motion stated specific reasons for withdrawal, (7) the defendant understood the nature of the charges and the possible penalties, and (8) the defendant had evidence of a plausible defense. *Id.*, citing *State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995), *see also State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269. Finally, courts have considered (9) "'whether the state would be prejudiced if the defendant were permitted to withdraw his guilty plea.'" *Id.*, quoting *State v. Barnes*, 172 Ohio St.3d 63, 2022-Ohio-4486, 222 N.E.3d 537, ¶ 32 (Brunner, J., concurring), citing *State v. Richter*, 8th Dist. Cuyahoga Nos. 46122 and 46123, 1983 Ohio App. LEXIS 15476, 2 (Sept. 29, 1983).

{¶ 19} Pampley argues that several of these factors weigh in support of his motion to withdraw his guilty pleas. Specifically, he argues that he made the motion within a reasonable time; he stated specific reasons for the withdrawal — given his mental state at the time of the plea, he was not capable of entering a knowing, voluntary, and intelligent plea; and he was not afforded a full hearing because the court did not allow him an opportunity to present evidence but merely heard arguments from the parties.

{¶ 20} With respect to the timing of the motion, we note that while it was a presentence motion, it was made one month after Pampley entered his guilty plea, immediately prior to the court sentencing Pampley. Further, with respect to

Pampley's argument that he was not afforded a full hearing, we note that the court held a brief hearing on the oral motion and concluded the hearing after asking if Pampley or defense counsel wished to place anything else on the record. The court engaged Pampley, defense counsel, and the assistant prosecuting attorney at length regarding Pampley's oral motion to withdraw his plea. Likewise, while Pampley now argues that he was not afforded the opportunity to present evidence in support of his motion, our review of the record shows that at no time did Pampley or his counsel attempt to present any evidence in support of his motion. Nor has Pampley clarified at any point, before the trial court or in this appeal, what evidence he was unable to present in support of his motion.

{¶ 21} Our review of the record also reveals that the court gave full and fair consideration to Pampley's motion. The court outlined on the record the reasons that it was denying Pampley's motion, including that it had engaged Pampley in a lengthy Crim.R. 11 plea colloquy before accepting his guilty plea, and that it was "abundantly clear" at the time of Pampley's plea that he would be sentenced to prison because of the one-year firearm specification and because of the applicability of the Reagan Tokes Law. Whether or not Pampley was suffering from physical or mental trauma at the time of his plea, his argument that he thought he would be "going home" after pleading guilty is entirely contradicted by his own statements on the record.

{¶ 22} For these reasons, the trial court did not abuse its discretion in denying Pampley's motion to withdraw his guilty pleas. Therefore, Pampley's first assignment of error is overruled.

**II. Reagan Tokes Law**

{¶ 23} In Pampley's second assignment of error, he argues that his indefinite sentence pursuant to the Reagan Tokes Law is unconstitutional. Specifically, Pampley argues that his indefinite sentence under the Reagan Tokes Law violates his constitutional right to a jury trial, the separation-of-powers doctrine, and his due process rights.

{¶ 24} In *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, the Ohio Supreme Court upheld the constitutionality of the Reagan Tokes Law, thereby overruling Pampley's arguments. Therefore, we overrule Pampley's second assignment of error.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR