[Cite as *State v. Jackson*, 2024-Ohio-2599.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

MCKINLEY JACKSON,

        Defendant-Appellant.

**CASE NO. 2023-L-112**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 000101

**O P I N I O N**

Decided: July 8, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*John P. Laczko*, John P. Laczko, LLC, City Centre One, Suite 975, 100 East Federal Street, Youngstown, OH 44503 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, McKinley Jackson, appeals the court of common pleas' denying his motion to withdraw his guilty plea. For the following reasons, we affirm the lower court's judgment.

**Substantive and Procedural History**

{¶2} The State indicted Appellant on four counts: (1) Attempted Murder, a first-degree felony, in violation of R.C. 2923.02; (2) Felonious Assault, a second-degree felony, in violation of R.C. 2903.11(A)(2) with a repeat violent offender specification; (3)

Felonious Assault, a second-degree felony, in violation of R.C. 2903.11(A)(1); and (4) Tampering with Evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1).

{¶3} Appellant pled not guilty. The State offered Appellant a plea agreement to plead guilty to count two and all other counts would be dismissed. Appellant accepted the plea agreement.

{¶4} On March 31, 2022, the court held a change of plea hearing. The court explained the charge to Appellant and asked if he understood, to which he replied that he did. The court then stated:

> Before accepting your guilty plea, I need to determine that you know and understand the rights that you will be waiving or giving up, the consequences of your guilty plea, and the maximum penalty that could be imposed on you and I must be satisfied that your plea is being made freely and that your plea is being made knowingly, intelligently, and voluntarily.

{¶5} The court next asked Appellant a series of questions and found that his plea was made knowingly, intelligently, and voluntarily. The court accepted the guilty plea.

{¶6} On May 16, 2022, the court held a sentencing hearing. The court explained to the prosecution and defense counsel that Appellant had written the court a letter stating that he wished to fire his attorney and "take back [his] plea." He explained that his attorney "felt that we wouldn't win the case. . . . She didn't want to collect evidence in my favor. So I felt forced to plea out."[1] The court asked defense counsel if she was aware of the letter and Appellant's wishes. She replied that she was not aware.

{¶7} The court proceeded and asked Appellant if he still wished to withdraw his guilty plea. Appellant replied that he did. Defense counsel asked the court if she may

---

1. We construe Appellant's letter as a motion to withdraw his guilty plea.

2

Case No. 2023-L-112

speak to Appellant privately first and the court replied: "You may.  However, I want you to make sure that he understands that I don't take pleas on the same case from the same person more than once.  . . . So that if I allow him to withdraw his plea, he'll go to trial on the original indictment, and I will never take a plea from him on this case again."

{¶8}    After speaking with counsel, Appellant decided not to withdraw his guilty plea.  The court asked Appellant if he was sure and he replied, "I'm sure."  The court sentenced Appellant.

{¶9}    Appellant appealed his sentence to this court.  His first assignment of error argued: "The trial court plainly erred by coercing Mr. Jackson to withdraw his motion to withdraw his plea by stating a blanket policy against accepting a plea after a plea withdraw [sic]."

{¶10}  In *State v. Jackson*, 2023-Ohio-762 (11th Dist.), this court reversed and remanded the sentencing court's judgment.  We held: "[T]he trial court erred in adopting a blanket policy of refusing to accept pleas more than once and that policy induced Appellant's withdrawal of his motion to withdraw his guilty plea."  *Id.* at ¶ 25.  We remanded the case to the trial court to hold a hearing on Appellant's motion to withdraw his guilty plea.  *Id.*

{¶11}  On August 4, 2023, Appellant filed a motion to withdraw his guilty plea.

{¶12}  On September 12, 2023, the trial court, on remand, held a hearing on Appellant's motion to withdraw.  The hearing's primary focus was on Appellant's letter's allegation that he wished to withdraw his guilty plea and terminate his attorney's representation because, he alleged, "nothing" had been done on his behalf.

{¶13} When the hearing commenced, the State conveyed to the court that there was additional evidence produced through discovery that was provided to Appellant after he pled guilty. The State explained that the discovery was "duplicative in nature" because all the information provided in the additional evidence was already in the record.

{¶14} Appellant testified at the hearing. He restated his concern that prior counsel, public defenders Mary Springer and Melissa Blake (who assisted Attorney Springer), did not represent him "properly." Specifically, he testified that they would not file motions on his behalf, did not independently look for finger prints on evidence, and did not conduct a background check on the victim. Appellant also recounted being given a "disk" while in jail. It contained evidence produced from discovery including photographs of the crime scene. Appellant claims he had not seen that evidence before. He alleged that the jail gave him the disk. Appellant said that he did not know at the time that defense counsel had sent it to him. He said he was given the disk after he pled guilty, but before his sentencing hearing on May 16, 2022. Appellant testified that after seeing the disk, he "decided that [he] wanted to take [his] plea back because their stories wasn't – the evidence wasn't supporting their stories." He explained that when he asked counsel about the evidence on the disk, "what I was trying to say to them, they didn't want to listen to it . . . and so at that time I felt that I had no choice but to just let go."

{¶15} Mary Springer testified that she represented Appellant in this case. Attorney Springer said that she "printed out the police reports and photographs" to review with Appellant before he accepted the plea agreement. She also reviewed each "pertinent" piece of discovery with Appellant that she thought had an impact on the case. She testified that she worked on the case "daily" because the case was moving quickly

4

since Appellant did not waive his right to a speedy trial. Attorney Springer said she "thoroughly" reviewed the crime scene photographs with Appellant. She also stated that she addressed Appellant's concerns over DNA evidence and the murder weapon. Relating to Appellant's request that she conduct a background check on the victim, she received a document containing the victim's criminal history. But, Attorney Springer advised Appellant that the document was designated for "counsel only."

{¶16} Melissa Blake testified that she assisted Attorney Springer in Appellant's case. Attorney Blake became involved in the case when Appellant had contacted her over his concerns with Attorney Springer's representation. Attorney Blake agreed to assist Attorney Springer in this case because she had a prior attorney/client relationship with Appellant, and he trusted her. Attorney Blake's involvement largely consisted of her advising Appellant: "You kind of have to trust what we're telling you. We're not misleading you. . . . You know I don't lie to you. You may not necessarily like what I have to tell you, but you understand it's going to be the truth." Attorney Blake advised Appellant that it was in his best interest to plead guilty.

{¶17} Attorney Blake explained that she did not personally review all discovery with Appellant because Attorney Springer had already been representing him. But, she said that she discussed discovery with Appellant that he was "focused" on, which included pictures of his suitcase the State offered as exhibits. She said Appellant "was having a lot of difficulty, I think, accepting some of what I would call critical evidence in the case against him." Attorney Blake was present at Appellant's sentencing hearing on May 16, 2022. She said that when Appellant was determining whether or not to withdraw his guilty plea, he insisted on reviewing each piece of evidence again. Attorney Blake eventually

5

told Appellant "we've gone through this" and that he needed to decide whether or not to withdraw his plea.

{¶18} On September 21, 2023, the court issued a judgment entry denying Appellant's motion to withdraw his guilty plea. The court found that Appellant's "self-serving" testimony regarding his attorney's representation was not credible. The court held that Appellant's reason for moving to withdraw his plea was a "change of heart . . . The record does not show that [Appellant] had a reasonable, legitimate basis to withdraw his plea."

{¶19} On October 26, 2023, the court sentenced Appellant to an indefinite sentence of eight to twelve years for Felonious Assault and four years for the repeat violent offender specification, to be served consecutively.

## Law and Analysis

{¶20} Appellant timely appeals. He raises one assignment of error.

{¶21} Assignment of error: "The trial court erred in denying Appellant's presentence motion to withdraw his guilty plea."

{¶22} "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus; *State v. Bisson*, 2013-Ohio-2141, ¶ 23, (11th Dist.) ("since the determination of a motion to withdraw lies within the trial court's sound discretion, the scope of our appellate review is limited to an 'abuse-of-discretion' analysis").

{¶23} "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.'" *State v. Underwood*,

6

2009-Ohio-2089, ¶ 30 (11th Dist.). Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting Black's Law Dictionary 11 (8th Ed.Rev.2004)." *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶24} Criminal Rule 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her guilty plea."

{¶25} A presentence motion to withdraw a plea should be granted liberally. *Xie*, 62 Ohio St.3d at 527. The Supreme Court has also recognized, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing," but, instead, "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* at paragraph one of the syllabus.

{¶26} In evaluating whether a trial court properly exercised its discretion in ruling on a presentence motion to withdraw a guilty plea, this court applies the four-factor test

7

pronounced in *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist.1980). *State v. Parham*, 2012-Ohio-2833, ¶ 19 (11th Dist.); *State v. Humr*, 2010-Ohio-5057, ¶ 15 (11th Dist.). Under *Peterseim*, a trial court does not abuse its discretion in denying a motion to withdraw a plea: "(1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." *Id.*

**{¶27}** "A mere change of heart regarding a guilty plea is an insufficient justification for the withdrawal of the guilty plea." *State v. Clifton*, 2022-Ohio-3814, ¶ 64 (8th Dist.).

**{¶28}** "[W]hen a defendant discovers evidence that would have affected his decision to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." *State v. Barnes*, 2022-Ohio-4486, ¶ 24.

**{¶29}** We stress that this court has routinely applied the *Peterseim* factors outlined in ¶ 25 to determine whether or not a court abuses its discretion in denying a presentence motion to withdraw a guilty plea. *State v. Whitted*, 2023-Ohio-3530, ¶ 10 (11th Dist.). *See also*, *State v. Parham*, 2012-Ohio-2833, ¶ 19 (11th Dist.). This court has, however, recognized that "*Peterseim* does not provide the exclusive test whereby appellate courts evaluate presentence motions to withdraw guilty pleas." *State v. Pudder*, 2014-Ohio-68, ¶ 17 (11th Dist.). Some appellate courts in this state have applied a nine-factor test described in *State v. Griffin*, 141 Ohio App.3d 551, 554 (7th Dist. 2001), ("*Griffin* factors").[2]

---

2. This court's recent decision in *State v. Strmac,* 2024-Ohio-2405 (11th Dist.) applied both tests. It applied the nine-factor test because the lower court relied on those factors. *Id.*

Case No. 2023-L-112

In his brief, Appellant cites the nine-factor test. But, the trial court below utilized the four-factor *Peterseim* test. We therefore analyze the *Peterseim* factors accordingly.

**A. The First Factor:**

{¶30} First, is whether the accused was represented by highly competent counsel.

{¶31} In his brief, Appellant asserts that counsel rendered ineffective assistance.

{¶32} "[A]n appellant's plea of guilty waives his or her right to assert an ineffective assistance claim unless counsel's errors affected the knowing and voluntary character of the plea." *State v. Green*, 2018-Ohio-3536, ¶ 19 (11th Dist.).

{¶33} We assess an ineffective assistance of counsel claim, for "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Story*, 2007-Ohio-4959, ¶ 49 (11th Dist.), quoting *Strickland v. Washington*, 466 U.S. 668, 686, (1984). An appellant must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 669. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A failure to "satisfy one prong of the Strickland test negates a court's need to consider the other." *State v. Madrigal*, 2000-Ohio-448, citing *Strickland*, at 697. As applied to guilty pleas, the second prong of the ineffective assistance test requires the defendant to "'show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty.'" *Xie* 62 Ohio St.3d at 524, quoting *Hill v. Lockhart*, 474 U.S. 52, 59, (1985).

{¶34} An appellant "must be able to demonstrate that the attorney made errors so serious that he or she was not functioning as 'counsel' as guaranteed by the Sixth

9

Case No. 2023-L-112

Amendment, and that he was prejudiced by the deficient performance." *Story* at ¶ 49, quoting *State v. Batich*, 2007-Ohio-2305, ¶ 42 (11th Dist.). Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." S*tate v. Bradley*, 42 Ohio St.3d 136, 142(1989). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85(1995).

**{¶35}** Attorneys Springer and Blake both testified to their experience as public defenders working on felony cases. They also testified to their work with Appellant on this case.

**{¶36}** Attorney Springer testified that she has been an attorney for over five years and had worked as a public defender since 2018. She said that she has worked "all different sorts of cases" ranging from misdemeanors to felonies of all degrees. Attorney Springer also detailed her typical procedure for meeting clients and discussing discovery with them, explaining that she would typically visit clients in jail to discuss discovery as she receives it. She explained that she followed the same procedure in this case.

**{¶37}** Attorney Blake testified that she has been a public defender for the Lake County Public Defender's Office for over eighteen years. She said that the "bulk" of her career was "handling any kind of felony case that we could get." Attorney Blake said that she advised Appellant to plead guilty, but that she also told him that he ultimately needed to make the decision whether or not to plead.

10

{¶38} From their experience alone, Attorneys Springer and Blake established their competence as public defenders for felony cases. But, Appellant asserts that they were ineffective for failing to provide him with, and review with him, discovery he alleges was important to his case. "[S]pecifically weapon photographs and the discovery he received after his guilty plea." In other words, Appellant argues that trial counsels' failure to review evidence with him affected the knowing and voluntary character of his guilty plea.

{¶39} Appellant asserts that he had not seen certain discovery until he saw them on a disk after he pled guilty. The record does not support Appellant's allegation. Instead, the evidence reveals that Appellant had difficulty accepting the evidence against him. Attorneys Springer and Blake both testified to reviewing with Appellant anything they determined important to his case and that they focused on addressing his concerns. Attorney Springer addressed Appellant's request for a background check on the victim, but was unable to share that information with him because it was designated for "counsel only." Appellant has not proven counsels' performance was deficient.

{¶40} As to weapon photographs Appellant received on a disk, Attorney Springer testified that she did not have a "specific recollection" of reviewing photographs of scissors or a knife with him. But, she said that she "specifically rember[ed] discussing" issues regarding the knife with him before he plead guilty. When asked if she reviewed all pieces of discovery with Appellant, Attorney Springer replied: "There was a lot of discovery here in this case and so we would have to talk often times in summary of what that discovery would include. If there were things that I thought were particularly important to his case, either in a good way or in a bad way, I would zero in on those . . .."

11

**{¶41}** Attorney Blake testified that she reviewed photographs of a suitcase with Appellant because that's what "he was focused on." When asked if she reviewed photographs other than the suitcase with Appellant, Attorney Blake responded: "I want to say he had those photos because I think I brought them back with me to the office from the jail. So like I didn't just take three photos of the suitcase with me, I don't believe. I think that he had them with him in his discovery packet and that I brought them back to the office with me to give them back to Ms. Springer . . .."

**{¶42}** Moreover, the trial court found that Appellant's self-serving testimony was not credible. "[W]e provide great deference to the [trier of fact]'s determination of witness credibility. The appellate court's ability to weigh the evidence and consider the credibility of witnesses is limited, since we must be mindful that the trier of fact was in the best position to evaluate the demeanor and credibility of witnesses and determine the weight to be accorded to the evidence." *State v. Fiederer*, 2020-Ohio-4953, ¶ 13 (11th Dist.).

**{¶43}** The first factor, whether the accused was represented by highly competent counsel, weighs against Appellant.

### B. The Second Factor:

**{¶44}** The second factor is whether the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered his original guilty plea.

**{¶45}** Crim.R. 11, which outlines the procedures that trial courts are to follow when accepting pleas, "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168(1975).

12

{¶46} The constitutional rights the defendant must be informed of are: (1) the right to a jury trial; (2) the right to confront witnesses against him; (3) compulsory process for obtaining witnesses in his favor; (4) the right to require the state to prove the defendant's guilt beyond a reasonable doubt at trial; and (5) the defendant cannot be compelled to testify against himself. *State v. Veney*, 2008-Ohio-5200, ¶ 19. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. *Id.* at ¶ 31.

{¶47} "The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no contest plea, the court may proceed directly to judgment and sentencing." *State v. Haudenschild*, 2024-Ohio-407 (5th Dist.), citing Crim.R. 11(C)(2). *See, also, State v. Sarkozy*, 2008-Ohio-509, ¶ 19-26 (post-release control is a non-constitutional advisement).

{¶48} "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler*, 2020-Ohio-2765, at ¶ 14. "But, when a trial court fails to fully cover other nonconstitutional aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea." *Id.*

{¶49} Appellant does not assert that the court failed to inform him of the rights afforded under Crim.R. 11(C)(2) when he originally entered his guilty plea. A review of

13

Case No. 2023-L-112

the March 31, 2022 change of plea hearing reveals that the trial court informed Appellant of all the rights under Crim.R. 11(C)(2).

**{¶50}** Appellant argues that in our prior opinion, *Jackson I*, this court "has already concluded Appellant's previous guilty plea was not made knowingly, intelligently, and voluntarily." That is not correct. In *Jackson I,* we held: "Appellant's *decision not to withdraw his guilty plea was involuntary*." *State v. Jackson*, 2023-Ohio-762, ¶ 21 (11th Dist.). The basis for that decision was that the court's blanket policy induced Appellant's decision to not withdraw his guilty plea. *Id.* at ¶ 20.

**{¶51}** For the reasons stated above, the second factor weighs against Appellant.

**The Third and Fourth Factors:**

**{¶52}** We address the third and fourth factors together. They are: (3) whether the accused was given a complete and impartial hearing on the motion; and (4) whether the record reveals that the court gave full and fair consideration to the plea withdrawal request.

**{¶53}** "Inviting and hearing oral arguments on a motion to withdraw a guilty plea at the sentencing hearing can constitute a full and fair hearing on the motion." *State v. Greenleaf*, 2006-Ohio-4317, ¶ 78 (11th Dist.), citing *State v. Burnett*, 2005-Ohio-1036, ¶ 20 (2d Dist.). "The term 'hearing' connotes an oral proceeding wherein the defendant is given a full opportunity to present arguments on his or her behalf." *State v. Story*, 2007-Ohio-4959, ¶ 18 (11th Dist.), citing *State v. Pachay*, 1995 WL 815350, *5-6 (11th Dist. Dec. 15, 1995). "Simply put, 'the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea . . . [and must

14

Case No. 2023-L-112

consider] all the circumstances surrounding the entering of the plea.'" *Id*., quoting *Xie*, 62 Ohio St.3d at 527.

{¶54} The scope of the hearing a trial court affords a defendant on a Crim.R. 32.1 motion to withdraw a guilty plea is "'dependent upon the facial validity of the motion itself.'" *State v. Thomas*, 2016-Ohio-4961, ¶ 18 (8th Dist.), quoting *State v. Wittine*, 2008-Ohio-5745, ¶ 8 (8th Dist.).

{¶55} The record in this case demonstrates that Appellant was given a complete and impartial hearing on his motion to withdraw his plea. In fact, subpoenas were issued to Attorneys Springer and Blake for their testimony at the trial. Their testimony addressed Appellant's claims that his attorneys had not properly defended his case or advised him. Appellant does not assert that the hearing on his motion was incomplete or partial.

{¶56} There is also nothing in this record to demonstrate that the court did not give full and fair consideration of Appellant's motion. The court issued a four-page judgment entry detailing the facts. It held that Appellant's reason for moving to withdraw his plea was a "change of heart . . . The record does not show that [Appellant] had a reasonable, legitimate basis to withdraw his plea."

{¶57} The third and fourth factors weigh against Appellant.

{¶58} All four *Peterseim* factors weigh against Appellant.

**Discovery Received After Guilty Plea:**

{¶59} In *State v. Barnes*, 2022-Ohio-4486, ¶ 24, the Ohio Supreme Court held that, without regard to considering any factors, a trial court may still abuse its discretion in denying a defendant's presentence motion to withdraw a guilty plea. This exception provides: "[W]hen a defendant discovers evidence that would have affected his decision

15

to plead guilty, he has a reasonable and legitimate basis to withdraw his guilty plea before sentencing." *Id.*

{¶60} There was evidence produced in discovery provided to the defense after Appellant entered his guilty plea. Those are: (1) medical records from Lake Health; and (2) "two 1996 police reports that dealt with convictions that [Appellant] had on his repeat violent offender specification."

{¶61} The State explained that the evidence was "duplicative in nature." The medical records contained "the same information" that had already been provided through discovery before Appellant entered his guilty plea. In reference to the 1996 police reports, the State said "all the information about those priors had already been provided" through discovery.

{¶62} Appellant has not demonstrated that the additional discovery affected his decision to withdraw his guilty plea.

{¶63} Having analyzed the *Peterseim* factors and reviewed whether or not Appellant discovered additional evidence that would have affected his decision to plead guilty, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea.

{¶64} Appellant's assignment of error is without merit

{¶65} The judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.

concur.

16

Case No. 2023-L-112