[Cite as *State v. Taylor*, 2025-Ohio-1454.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114185 |
| v. | : | |
| JURON TAYLOR, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 24, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687689-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Paolucci, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant, Juron Taylor, appeals the trial court's denial of his presentence motion to withdraw his guilty plea. For the reasons that follow, this court reverses the trial court's decision and Taylor's conviction and remands for further proceedings.

## I. Procedural Background

{¶ 2} On December 17, 2023, the State charged Taylor with three counts of rape, in violation of R.C. 2907.02(A)(1)(c), for offenses that occurred approximately two years prior — "on or about January 14, 2022 through May 7, 2022." The indictment alleged that Taylor engaged in sexual conduct with a substantially impaired victim — the mother of his child. He pleaded not guilty, was appointed counsel, and demanded a jury trial, which was scheduled for April 1, 2024.

{¶ 3} At a March 28, 2024 pretrial, appointed counsel requested a continuance of trial because he recently received certain discovery from the State that "he'd like to review with [Taylor]." (Tr. 6.) This discovery included video evidence of the alleged rape, bolstering the State's case. Additionally, appointed counsel advised the court that Taylor was "insistent" about obtaining certain evidence and thus he "needed more time to investigate." (Tr. 14.) The court granted the continuance, rescheduling the jury trial for May 29, 2024.

{¶ 4} On May 24, 2024, appointed counsel filed a notice, informing the trial court that "Taylor is seeking new counsel [and] that he no longer wants the undersigned counsel to serve as [his] attorney."

### A. The Day of Trial

{¶ 5} On May 29, 2024, the case was scheduled for a jury trial. Appointed counsel immediately advised the court that Taylor discharged him as counsel and had retained new counsel ("retained counsel"). He advised the court that although Taylor sent a text discharging him the week prior, their attorney-client relationship

broke down about two months prior when they had "fundamental disagreements" on how to proceed, characterizing Taylor's defense requests as "repugnant to [appointed counsel]" based on the allegations and that Taylor and the victim have "family" together. Counsel advised the court that Taylor now had the means to retain counsel. (Tr. 55-59.)

{¶ 6} Taylor acknowledged counsel's statements, stating that he retained counsel, who was "in the building" and would represent him. Appointed counsel further advised that he spoke to retained counsel, who confirmed that she was being retained and that she would be in the courthouse on the day of trial. It was insinuated, however, that retained counsel would need a continuance. The court asked about retained counsel's whereabouts and stated to Taylor that until she arrived, the court would order the jury for trial, and until then "you have [appointed counsel]" because "[the case] is being presented [for trial] today." (Tr. 37.)[1]

{¶ 7} The court then addressed the State's recent filings: (1) motion in limine, which sought to prevent the defense from using any of the victim's prior sexual history or conduct, and (2) notice of intent to use Evid.R. 404(B) evidence, which included Taylor's internet search history for specific pornography interests that involved impaired individuals and sexual conduct, to demonstrate that he acted in conformity with those searches. Appointed counsel advised the court that he briefly reviewed and discussed these recently filed motions with Taylor.

---

[1] The record reflects that retained counsel had not yet filed a notice of appearance.

{¶ 8} When Taylor and appointed counsel could not contact retained counsel, the trial court asked Taylor why he wanted new counsel. Taylor stated that appointed counsel did not subpoena key witnesses for trial, who would rebut the victim's claims and offer defense evidence. Appointed counsel confirmed that he did not subpoena any of Taylor's desired witnesses nor did he provide any names to the State in reciprocal discovery.

{¶ 9} Although Taylor stated that he had a defense to the allegations, the State insinuated that the video evidence was overwhelming. The trial court then inquired about the facts of the case, the content of video itself, and made certain findings and conclusions about the case. During this discussion, Taylor expressed that appointed counsel did not show him the actual video evidence that served as the basis for the allegations and alluded that other videos existed of other prior encounters with the alleged victim. The prosecutor advised that the video was marked "counsel only"; thus she would not have expected counsel to show Taylor the video. The record before this court is not entirely clear whether appointed counsel showed Taylor the video or just described it to him.

{¶ 10} Regarding Taylor's purported defense to the charges, appointed counsel and Taylor both offered an explanation about how and why these charges arose, and Taylor stated that his witnesses would refute the victim's credibility, not the video itself. The State claimed that Taylor's witnesses' testimony would be inadmissible hearsay, improper impeachment evidence, and may be prohibited under the rape shield law.

{¶ 11} When the trial court asked Taylor again why he wanted to discharge appointed counsel, Taylor reiterated that counsel did not subpoena his witnesses or obtain other beneficial evidence. When Taylor, himself, could not tell the court how that evidence would be admissible at trial, appointed counsel advised that he and Taylor did not agree about trial strategies and defenses. The State interjected, claiming that Taylor's strategy may not even be admissible, which the trial court essentially confirmed. At that point, the court advised the parties that the case would go forward with appointed counsel representing Taylor for trial because it had continued trial once before.

{¶ 12} Before the court called the jury into the courtroom, appointed counsel explained his understanding of the circumstances and stated that it would be an "injustice here if we're forced to go forward . . . [because] . . . I believed I was discharged." (Tr. 66.) The court indicated that Taylor had been treated fairly and would continue to be treated fairly but advised that appointed counsel and Taylor should keep trying to contact retained counsel. The trial judge stated, "And let's get that fair treatment going at a trial today, instead of possibly never, given his proposed substitute counsel's own difficulties that she is going through." (Tr. 68.)[2] The court called in the jury, and voir dire commenced.

---

[2] At the time, retained counsel had a disciplinary action pending against her in which the Ohio Supreme Court, Board of Professional Conduct, recommended that counsel be permanently disbarred from the practice of law in the State of Ohio. Retained counsel has since been disbarred by the Supreme Court of Ohio.

## B.  Taylor Pleads Guilty

{¶ 13} During voir dire, appointed counsel notified the court that Taylor wished to take a plea deal.  After conferring with a supervisor, the State offered that if Taylor pleaded guilty to an amended count of sexual battery, a third-degree felony, it would dismiss the remaining two counts of rape.  Appointed counsel indicated that Taylor would accept the plea offer.

{¶ 14} The trial court engaged in a full Crim.R. 11 plea colloquy with Taylor, which included advising Taylor that by pleading guilty, he could be in violation of his Cleveland Municipal Court probation and that he could not appeal the trial court's decision denying his request for a continuance.  (Tr. 173.)  The trial court then gave Taylor the option to either (1) resume trial and risk the outcome; or (2) move forward with the plea bargain and "admit to a reasonably serious felony."  (Tr. 173.)  Taylor chose to "take the plea bargain."  *Id.*  He reiterated his choice again after talking with appointed counsel.  (Tr. 174.)  Taylor then pleaded guilty to sexual battery, and sentencing was scheduled for June 14, 2024.

## C.  Taylor Moves to Withdraw His Plea

{¶ 15} On June 12, 2024, prior to sentencing, Taylor filed a pro se motion to withdraw his plea, with his own supporting affidavit.  According to his pro se motion, he pleaded guilty due to fear, panic, and coercion because his appointed counsel was admittedly unprepared for trial, and if convicted, he would be subject to 33 years in prison.  He admitted that the court engaged in a Crim.R. 11 colloquy but claimed that he was actually innocent and wished to proceed to trial.

{¶ 16} On June 14, 2024, the morning of sentencing, retained counsel filed a notice of appearance and a motion to withdraw plea, contending that Taylor was coerced to take a plea after being denied a continuance and forced to proceed to trial with appointed counsel. The motion also alleged that appointed counsel was ineffective because (1) Taylor never saw the video evidence against him; (2) counsel did not subpoena witnesses who would testify about the victim's motivations and credibility regarding her allegations; and (3) the attorney-client relationship was broken, and thus Taylor should not have been forced to proceed to trial with appointed counsel. The motion also included the names of the witnesses who Taylor identified for trial and the content about which they would testify.

### D. The Trial Court Conducts an Evidentiary Hearing

{¶ 17} Both appointed and retained counsel appeared with Taylor for sentencing. After a brief discussion, the trial court excused appointed counsel, and the matter proceeded with retained counsel representing Taylor. The trial court converted the sentencing hearing to an evidentiary hearing on Taylor's motion to withdraw his plea. Although retained counsel had ordered but not received a transcript of the plea hearing, Taylor testified in support of his motion.

{¶ 18} Taylor's testimony focused on the nearly two-year delay between the incident and the indictment, noting that he and victim lived together almost this entire time and that the victim knew about the video during that time. He alleged that the charges against him occurred because the victim had ulterior motivation.

Taylor stated that his appointed counsel did not subpoena witnesses who would testify about conversations by the victim during this period.

{¶ 19} Taylor further testified that the attorney-client relationship had broken down. Specifically, he said that appointed counsel did not (1) show him the actual video that led to the charges, (2) discuss with him any pretrial motions, (3) have any appointments with him except at pretrials, and (4) provide him with any discovery. Taylor testified that he asked to discharge his attorney and proceed with retained counsel because they disagreed about the case, with Taylor wanting to go to trial. He stated that on the day of trial, he did not want to proceed with appointed counsel because he had retained counsel, but after the court denied appointed counsel's requests to withdraw and for continuance, he felt pressured and felt had no choice but to proceed to trial. Taylor alleged that appointed counsel was not prepared for trial and thus when forced to go forward with trial, he was fearful of the outcome and asked for a plea deal. Taylor further told the court, "I'm innocent. So I had to take that plea, I didn't want to go to trial with that counsel." (Tr. 226.) Taylor admitted that he had a full Crim.R. 11 plea hearing and acknowledged that withdrawing his plea meant facing the indictment and if convicted, faced over 30 years in prison. He nonetheless professed innocence.

{¶ 20} The State's cross-examination focused on the thoroughness of the change-of-plea hearing and then on the facts of the case itself. Over repeated objections that the State's questioning went beyond the standard as to whether Taylor presented a "reasonable and legitimate basis to withdraw his plea," the trial

court allowed the State to play the video evidence, delve into the details of the video, and question him about his defense to the video. During this presentation, Taylor testified that the sexual conduct in the video was consensual and that the victim was using the video as blackmail or leverage. The State surmised that Taylor's motion to withdraw was merely a change of heart.

{¶ 21} The trial judge also engaged in a discussion with the parties about the facts and evidence, finding the video evidence significant. He stated that he afforded Taylor a full plea hearing and thus questioned his motivations for seeking to withdraw his plea.

{¶ 22} Nevertheless, Taylor chose to proceed with his motion to withdraw his plea even after testifying, observing the video, hearing the trial judge's comments and concerns, and with the understanding that withdrawing his plea meant facing the indictment and possible penalties.

{¶ 23} On July 2, 2024, the trial court denied Taylor's request to withdraw his plea in a lengthy written decision, addressing the relevant standards and factors, but also making factual determinations about the case and its own conclusion about the evidence. The trial court ultimately concluded that Taylor's request to withdraw his plea was merely a change of heart.

{¶ 24} On July 8, 2024, the trial court sentenced Taylor to serve 54-months in prison. This appeal followed.

## II.  The Appeal

{¶ 25} Taylor raises three assignments of error that concern whether he entered a knowing, intelligent, and voluntary plea.  He contends that (1) the court abused its discretion in denying his motion to withdraw his plea, (2) he was denied effective assistance of counsel, and (3) the court abused its discretion in denying his request for a continuance for retained counsel to appear at trial.

### A. Denial of Request to Withdraw his Plea

{¶ 26} In his first assignment of error, Taylor contends that the trial court abused its discretion when it denied his presentence motion to withdraw his guilty plea.

{¶ 27} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 28} In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).  It is well established, however, that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing.  A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id*. at paragraph one of the syllabus.

{¶ 29} Although a presentence motion to withdraw should be "freely and liberally granted," the decision to grant or deny a presentence motion to withdraw

is within the trial court's discretion. *Id.* at paragraph two of the syllabus. An abuse of discretion occurs when "a court exercise[s] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 30} Courts have traditionally considered nine factors when reviewing a trial court's decision denying a defendant's presentence motion to withdraw a guilty plea. Those factors include whether a defendant was (1) represented by competent counsel, (2) given a full Crim.R. 11 hearing before he entered the plea, (3) given a complete hearing on the motion to withdraw, and (4) the record reflects that the court gave full and fair consideration to the plea-withdrawal request. *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), paragraph three of the syllabus.

{¶ 31} Additionally, consideration is given to whether (5) the motion was made in a reasonable time, (6) the motion stated specific reasons for withdrawal, (7) the defendant understood the nature of the charges and the possible penalties, and (8) the defendant had evidence of a plausible defense. *State v. Fish*, 104 Ohio App.3d 236 (1st Dist. 1995), *see also State v. Heisa*, 2015-Ohio-2269 (8th Dist.). Finally, courts have considered (9) "whether the state would be prejudiced if the defendant were permitted to withdraw his guilty plea." *State v. Barnes*, 2022-Ohio-4486, ¶ 32 (Brunner, J., concurring), citing *State v. Richter*, 1983 Ohio App. LEXIS 15476, *2 (8th Dist. Sept. 29, 1983). Consideration of these factors is a balancing test, and no one factor is conclusive. *Fish* at 240.

**{¶ 32}** In this case, the trial court issued a written decision, addressing each of these factors before denying Taylor's motion. Based on our review of the trial court's decision, the *Peterseim*/*Fish* factors, and the record before this court, we find that the trial court abused its discretion in denying Taylor's presentence motion to withdraw his plea because the factors weigh in favor of granting Taylor's motion.

### 1. Represented by Competent Counsel

**{¶ 33}** The trial court's decision found that Taylor's appointed counsel was competent, focusing on the court's own prior experiences and counsel's professional background, which is not in the record. The trial court did not reference, however, any specific conduct or discussions pertaining to counsel's representation in this specific case.

**{¶ 34}** Although Taylor's appointed counsel may be regarded as highly competent in the legal community, "competent counsel," includes more than reputation and experience. *See* Ohio Rules of Professional Conduct 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation *reasonably* necessary for the representation.") (Emphasis in original.) Accordingly, competent counsel also means prepared counsel. *Id*. at Comment 5 (competent handling of a particular matter "includes adequate preparation"); s*ee also In re Gould*, 1987 Ohio App. LEXIS 6280 *7 (4th Dist. Apr. 1, 1987) (Grey, J., concurring).

**{¶ 35}** Taylor's appointed counsel admitted on the record that he believed he was discharged and that communication between he and Taylor had broken down

months prior. Based on the record and counsel's statements, we glean that he was not properly prepared for trial due to his good-faith belief that he was discharged because he spoke with retained counsel, who confirmed that she was being retained and would be "in the building" on the day of trial. He further admitted that he did not subpoena any witnesses for trial and only briefly reviewed the State's recently filed pretrial motions that potentially affected Taylor's defense and also sought to introduce arguably prejudicial other-acts evidence against Taylor. Finally, after the trial court denied any continuance for retained counsel to appear and ordered appointed counsel to proceed with Taylor to a jury trial on three first-degree felony counts of rape, counsel stated on the record that going forward with trial would be an "injustice" to Taylor. Admittedly, there may be times when defense counsel falls on his own sword for their client, but the record before this court does not prove to be the case here.

{¶ 36} Accordingly, we find that this factor weighs in favor of granting Taylor's motion to withdraw his plea.

### 2. Given A Full Crim.R. 11 Hearing Before Entering the Plea

{¶ 37} In its decision, the trial court noted that it provided Taylor a full Crim.R. 11 hearing that included the requisite mandatory advisements, which Taylor agreed that he understood and further understood his options and the consequences of pleading guilty. Taylor does not dispute that the trial court conducted a full Crim.R. 11 hearing before he entered his guilty plea, and our review is the same.

{¶ 38} We note, however, that the trial court never asked Taylor whether he was satisfied with appointed counsel's representation or whether any threats or promises were made to him to induce his plea. Although these questions are not required under Crim.R. 11, we find that the answers a defendant provides can offer insight as to whether a defendant's plea was voluntary because a guilty plea, if coerced or induced by promises or threats, renders the plea involuntary. *State v. Kelly*, 2010-Ohio-432, ¶ 21 (8th Dist.), citing *State v. Allen*, 2009-Ohio-3799, ¶ 16 (6th Dist.). *See also State v. Wooden*, 2004-Ohio-588 (10th Dist.) (consideration of a trial court's inquiry regarding satisfaction with counsel is among those factors a court may utilize to determine whether a plea is knowing, intelligent, and voluntary).

{¶ 39} In *State v. Jones*, 2016-Ohio-951 (10th Dist.), the Tenth District addressed a similar issue where the defendant, in support of his motion to withdraw his plea based on ineffective assistance of counsel, contended that the trial court did not inquire whether he was satisfied with counsel. *Id.* at ¶ 22. In *Jones*, the defendant accepted a plea deal after the trial court denied counsel's request for a continuance and counsel admitted that he was not prepared for trial due to the co-defendants accepting a last-minute plea deal, thus changing trial strategy and available witnesses. In addressing this argument in consideration of the *Perseim/Fish* factors, the *Jones* Court found that although the trial court complied with Crim.R. 11 and the defendant stated his plea was voluntary, the trial court could have inquired further as to whether he was satisfied with his attorney due to the

circumstances prior to accepting a plea. *Id.* Accordingly, the *Jones* Court found this factor "neutral" in the balancing test. *Id.*

{¶ 40} In this case and considering the circumstances surrounding Taylor's change of plea — pleading guilty after the trial court denied Taylor's request to discharge his appointed counsel and for a continuance to proceed with retained counsel, appointed counsel raising concerns about going forward with trial, and Taylor asking for a plea during the middle of voir dire — the answers to the questions about attorney satisfaction and inducement were relevant and necessary. Moreover, the answers provided could have potentially refuted any future claim that Taylor entered an involuntary plea. *Compare State v. Lane*, 2020-Ohio-6798, ¶ 18 (3d Dist.) (defendant's affirmative answers regarding being satisfied with his counsel and that no one compelled him to plead revealed that no irregularities existed regarding his plea even though he attempted to discharge his counsel prior to the plea). Accordingly, we conclude, like the *Jones* Court, that this factor in our balancing test is neutral and does not weigh in favor of either the State or Taylor.

### 3. Given A Complete Hearing on The Motion to Withdraw

{¶ 41} The trial court stated in its decision that, although not obligated pursuant to Crim.R. 32.1, it afforded Taylor a full hearing on his motion to withdraw with retained counsel representing Taylor. Despite the trial court's assertion to the contrary, the Ohio Supreme Court mandates that "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie*, 62 Ohio St.3d at 527.

**{¶ 42}** Nevertheless, Taylor does not dispute that the trial court afforded him a complete hearing on the motion to withdraw. Our review of the record reveals that Taylor was represented by his counsel of choice and the court conducted a full evidentiary hearing, enabling him to see the State's evidence, provide sworn testimony about the events giving rise to the indictment, offering his defense to the State's case, asserting his belief that he was innocent, and wishing to withdraw his plea and proceed to trial. Accordingly, this factor weighs in favor of denying Taylor's motion.

### 4. The Motion Was Made in A Reasonable Time

**{¶ 43}** The trial court concluded in its decision that the timing of Taylor's presentence motion to withdraw did not "suggest gamesmanship or delay," but that the timing of retaining new counsel did. The court focused on this timing to support its conclusion that Taylor was motivated to delay the proceedings. While that consideration may have been relevant in deciding whether to discharge Taylor's appointed counsel or grant Taylor a continuance to retain new counsel, the timing or motivation of retaining new counsel is irrelevant to whether Taylor's presentence motion to withdraw his plea was made within a reasonable time.

**{¶ 44}** Although retained counsel filed the motion to withdraw the plea with her notice of appearance on the morning of sentencing, Taylor filed his pro se motion to withdraw his plea less than two weeks after accepting the plea and days before sentencing. *Compare Jones*, 2016-Ohio-951, ¶ 25 (10th Dist.) (finding the timing reasonable when the presentence motion to withdraw was filed two months

after the plea, but three weeks prior to sentencing).  Accordingly, this factor weighs in favor of granting Taylor's motion.

### 5.  The Motion Stated Specific Reasons for Withdrawal

**{¶ 45}** The trial court's decision acknowledged that Taylor asserted specific reasons why his guilty plea should be withdrawn, classifying his reasons as (1) appointed counsel's substandard representation and (2) innocence.  The trial court criticized Taylor for not calling appointed counsel as a witness to substantiate his claims of deficient representation and further found that Taylor's allegations about appointed counsel not showing him the video lacked credibility, considering that Taylor made the video.  The trial court instead focused on the content of the video, finding it "compelling" and making its own conclusions about the content.

**{¶ 46}** We find that the trial court's conclusions and findings are unreasonable and arbitrary because appointed counsel did not need to testify about what he already stated in open court. *See Jones* at ¶ 17 (when the transcript of earlier proceedings corroborates a defendant's statements about this counsel's lack of preparedness, counsel testifying at a plea-withdrawal hearing is not necessary).  Accordingly, the trial court's criticism of Taylor for not calling appointed counsel as a witness during the motion hearing is unfounded considering that on the day of trial, appointed counsel (1) stated that he was uncertain whether he showed Taylor the video evidence supporting the basis for the charges; (2) admitted that he only briefly reviewed the State's evidentiary motions; (3) believed he was discharged; (4) admitted that he did not subpoena any witnesses; (5) classified Taylor's defense

strategy as "repugnant"; and (6) stated that going forward with trial would be an "injustice." The trial court neither acknowledged nor addressed these statements in its decision.

**{¶ 47}** Our review of Taylor's motion and testimony reveals that Taylor asserted specific reasons for why he wished to withdraw his plea. He first asserted that appointed counsel's representation was deficient and then claimed that his plea was not voluntary but rather coerced because he was forced to go forward with trial with appointed counsel. Based on our review of record, we find that Taylor believed that he was left with a Hobson's choice: either plead or go to trial with an attorney unable to adequately defend him. Accordingly, Taylor's reasons are sufficient enough for this factor to weigh in favor of granting his motion to withdraw his plea.

### 6. The Defendant Understood the Nature of The Charges and The Possible Penalties

**{¶ 48}** In the trial court's decision, it found that prior to Taylor entering his guilty plea, he clearly understood the indicted offenses, the possible penalties, the amended charge, and possible sentence. Taylor does not dispute the trial court's findings, and our review of the record reveals the same. This factor weighs in favor of denying Taylor's motion to withdraw his guilty plea.

### 7. The Defendant Had Evidence of a Plausible Defense

**{¶ 49}** The trial court found that Taylor's defense of innocence required a review of the available evidence. The court focused on the video evidence, finding it compelling and its introduction into evidence "highly likely." The court made a factual conclusion about the victim's condition in the video without any supporting

testimony. The court also stated that the victim was "fully cooperative" because she appeared at trial. The court then addressed Taylor's purported defense, contending that Taylor's ability to find a "credible argument" would be difficult and that the Rules of Evidence would hinder his defense. The court also noted the difficulty in Taylor's defense that the conduct in the video was consensual. The court stated:

> In summary — acknowledging the pre-plea presumption of innocence — the evidence is not in Taylor's favor and the risk of conviction at trial is great. There is no evidence of record to suggest that his defense of innocence is plausible. In the face of all of the likely trial evidence, Taylor's agreed guilty plea to a significantly less serious offense is unquestionably rational.

{¶ 50} This court may agree with some of the trial court's assessments and conclusions, recognizing that Taylor's exposure to a substantial prison sentence had been lessened by the plea agreement. Nevertheless, the issue is not whether Taylor's defense would be believed by a jury but whether or not a plausible defense exists. *See State v. Brown*, 2002-Ohio-1350, ¶ 47 (10th Dist.).

{¶ 51} Taylor contended that he is innocent and has evidence that would challenge the victim's credibility. The trial court disagreed, prematurely making admissibility determinations and then concluding that the "evidence suggests that his defense of innocence is [not] plausible." This finding, however, is based solely on the court's view of the State's video evidence and not on any supporting testimony by any witnesses.

{¶ 52} "[T]he balancing test does not require the defendant seeking to withdraw his plea be able to uncontrovertibly prove his defense at the motion

hearing. Instead, the balancing test asks only whether the defendant had possible defenses. Whether [a defendant] will be successful in those defenses is for a jury to decide." *Jones*, 2016-Ohio-951, at ¶ 29 (10th Dist.). We agree with this rationale and therefore conclude that Taylor has at least articulated a plausible defense for purposes of the plea-withdrawal balancing test. Accordingly, this factor weighs in Taylor's favor.

### 8. Whether the State Would Be Prejudiced If the Defendant Were Permitted to Withdraw His Guilty Plea

{¶ 53} The trial court acknowledged that the decision to go forward with trial or plead guilty is a serious decision, but that plea agreements provide alternative resolutions for both parties considering the unpredictability at trial. Nevertheless, the trial court classified Taylor's decision to withdraw his plea as a "whim," and if it were not, then Taylor would have supported "his claims with evidence other than his own version of what passed between him and [appointed counsel]." The court focused on the victim being "whipsawed" by Taylor and that "Taylor's change of heart has surely caused her embarrassment at the least and re-traumatization at the most."

{¶ 54} Although the trial court's concerns about the victim may be relevant, we find that the State would not be prejudiced if Taylor were permitted to withdraw his plea. This case is relatively straightforward and as the trial court recognized in its decision, the only two individuals who knew what transpired that day are the victim and Taylor, but the State also possesses video evidence of the conduct giving rise to the allegations. The concern of memories fading, witness unavailability, or

evidence being lost is not at issue in this case. *Compare State v. Francis*, 2004-Ohio-6894, at ¶ 40. ("The more time that passes between the defendant's plea and the filing of the motion to withdraw it, the more probable it is that evidence will become stale and that witnesses will be unavailable.").

{¶ 55} In *Fish*, the First District noted its prior unreported decision in *State v. Davis*, No. C-860638 (1st Dist. Nov. 4, 1987), holding that where "there is no evidence of prejudice to the prosecution, the court abuses its discretion in failing to grant a motion to withdraw a guilty plea filed before sentencing." *Fish*, 104 Ohio App.3d at 239-240 (1st Dist.). The *Fish* Court acknowledged, however, that although prejudice to the State is just one factor and not the deciding factor, it is nonetheless an "important factor." *Id.* at 240.

{¶ 56} We find that the trial court's decision to focus on Taylor's seemingly whimsical decision and victim impact, rather than on whether the State would be prejudiced if Taylor withdrew his plea, reveals that the trial court's decision was unreasonable. The record before this court demonstrates that Taylor's decision to withdraw his plea was not merely a change of heart but based on the totality of the circumstances and his belief that he is actually innocent. Accordingly, we find that the record does not indicate any evidence of prejudice "beyond the ordinary impact of any defendant's subsequent withdrawal of a guilty plea." *State v. Harris*, 2010-Ohio-4127, ¶ 26 (10th Dist.). This factor weighs in favor of granting Taylor's motion to withdraw.

### 9. Full and Fair Consideration to The Plea-Withdrawal Request

{¶ 57} Regarding this factor, the trial court stated in its decision "[w]hether the court conducted the hearing impartially and has given the motion full and fair consideration are, perhaps, best left to the observations and opinions of a reviewing court."

{¶ 58} Based on this court's discussion of the prior factors, we find that the trial court gave full consideration to Taylor's motion, but not fair consideration. The trial court's written decision focused on factors that were not relevant to whether Taylor had a "legitimate and reasonable basis" for withdrawing his plea, often focusing on the deficiencies in retained counsel's conduct, delay in seeking retained counsel, or failure to call appointed counsel as a witness at the Crim.R. 32.1 hearing. The trial court did not identify or discuss any statements made by appointed counsel on the day of trial, including that appointed counsel was not fully prepared and believed that he was discharged.

{¶ 59} Moreover, we find that the trial court gave greater weight to what it deemed to be in Taylor's best interests by suggesting that the plea agreement greatly reduced his exposure to a greater penalty as opposed to going to trial. The focus, however, is whether Taylor established a "reasonable and legitimate basis" for withdrawing his plea.

{¶ 60} Finally, even after the trial court conducted the hearing and Taylor unequivocally wished to proceed with withdrawing his plea, the trial court found that Taylor's motivations were harassment to the victim, a whimsical decision, and

a mere change of heart. Given the trial court's involvement in rendering advisory rulings, commenting on the State's evidence throughout the proceedings, and discounting any defense Taylor may have, we find that the trial court focused more on the merits of Taylor's case, not whether his plea should be withdrawn. Accordingly, this factor weighs in favor of granting Taylor's motion to withdraw his plea.

## III. Conclusion

{¶ 61} The trial court performed the requirements of engaging in a thorough Crim.R. 11 plea colloquy and then subsequently conducting a hearing on Taylor's motion, but those hearings occurred after the trial court's rejection of appointed counsel's request to withdraw, preventing Taylor from proceeding with his retained counsel. Appointed counsel admitted that the attorney-client relationship broke down months prior with differing views on trial strategies. Counsel's admissions that he believed that he was discharged, did not respond to, or sufficiently review the State's last-minute pretrial motions, did not subpoena witnesses, or show Taylor the video evidence, and even characterized going forward with trial as an "injustice," weighs heavily in support of Taylor's motion. The subsequent full and complete Crim.R. 11 plea colloquy was tainted by Taylor being denied his right to effective assistance of counsel and a continuance to allow his retained counsel to appear at trial.

{¶ 62} The record is uncontroverted that Taylor made a knowing and voluntary decision in one instance and that was to proceed with his motion to

withdraw his plea after (1) seeing the video evidence against him; (2) learning how the trial court would potentially perceive his defense; (3) knowing the trial court's opinion of the content of the video evidence; (4) learning that his witness testimony may be inadmissible; (5) knowing what the plea agreement entailed; and (6) knowing that if his plea was withdrawn, he would be facing three counts of rape, felonies of the first degree, punishable by up to 33 years plus Reagan Tokes time. Moreover, Taylor has decided to pursue this appeal, knowing that his sentence is 54 months in prison and that his retained counsel is no longer available for legal representation. Accordingly, this court can confidently conclude that Taylor made his decision to withdraw his plea and continued his pursuit of vacating his plea, with a full understanding of the nature of his charges, possible penalties, and the evidence against him. Based on the foregoing, we find that the *Peterseim/Fish* factors weigh in Taylor's favor, and thus the trial court abused its discretion by not "freely and liberally granting" Taylor's presentence motion to withdraw his plea.

{¶ 63} Taylor's first assignment of error is sustained. His second and third assignments of error are hereby rendered moot. *See* App.R. 12(A)(1)(c).

{¶ 64} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHAEL JOHN RYAN, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 65} I respectfully dissent and find no abuse of discretion by the trial court in denying Taylor's presentence motion to withdraw his guilty plea.

{¶ 66} The Supreme Court of Ohio established in *State v. Xie*, 62 Ohio St.3d 521 (1992), that although a presentence motion to withdraw a guilty plea should be freely and liberally granted, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing and the decision rests within the sound discretion of the trial court, which must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. *Xie* at 527. Absent an abuse of discretion, the trial court's decision must be affirmed. *Id.* The Supreme Court reaffirmed this standard in *State v. Barnes*, 2022-Ohio-4486, citing *Xie* at 526-527.

{¶ 67} Though courts have commonly applied the nine-factor analysis applied by the trial court and majority in this case,[3] it has not been adopted by the

_____
[3] I recognize the trial court referenced eight of the nine factors.

Supreme Court of Ohio, nor does Crim.R. 32.1 indicate that any such factors or the weighing of them is necessary. *See Barnes* at ¶ 33, 36 (Brunner, J., concurring). Nonetheless, regardless of whether those factors are considered, as recognized by Justice Brunner*,* "the nine-factor analysis should not overshadow the exercise of judicial discretion needed to analyze a presentence plea withdrawal in accordance with the basic principles established by *Xie* and Crim.R. 32.1." *Barnes* at ¶ 40 (Brunner, J., concurring).

{¶ 68} As was the case in *Xie*, in this case the trial court held a hearing and carefully considered all the circumstances surrounding Taylor's entering of his guilty plea. The trial court issued a detailed decision in which it weighed various factors. As stated in *Xie*, "[i]t is not the role of an appellate court to conduct a *de novo* review of a trial court's decision in these circumstances." (Emphasis sic.) *Id.* at 527. Rather, "[w]e must find the trial court's ruling was 'unreasonable, arbitrary, or unconscionable'" in order to find there was an abuse of discretion. *Id.*, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 69} Ultimately, the trial court did not find a reasonable or legitimate basis for the withdrawal of Taylor's plea, but rather found Taylor was essentially seeking to have his plea undone on a whim that displayed inconstancy and a change of heart. As this court recently observed, "a mere change of heart is an insufficient basis for withdrawing a guilty plea" and "a defendant's claim of innocence alone is insufficient grounds for vacating a plea that was knowingly, voluntarily, and intelligently entered." (Citations omitted.) *State v. Parker,* 2025-Ohio-457, ¶ 15 (8th Dist.).

Unlike the majority herein, I find the trial court acted within the bounds of its discretion in reaching its decision in this matter.

{¶ 70} Having reviewed the trial court's decision and the record in this case, I do not find that the trial court's ruling was unreasonable, arbitrary, or unconscionable. I am unable to agree with the majority's determination otherwise. Because I find no abuse of discretion occurred, I would affirm the trial court's decision.